**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Larry PENNINGTON, Defendant-Appellant.**

**No. 27213.**

United States Court of Appeals,
Fifth Circuit.

April 20, 1971.

Rehearing Denied and Rehearing En Banc Denied June 8, 1971.

Albert M. Horn, Atlanta, Ga., for defendant-appellant.

William A. Meadows, Jr., U. S. Atty., J. V. Eskenazi, Neal R. Sonnett, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, SIMPSON, and MORGAN, Circuit Judges.

## ON PETITION FOR REHEARING

COLEMAN, Circuit Judge.

This is the second appeal in this case. Our prior decision, on other issues, is reported at 392 F.2d 421 (1968).

We originally decided the instant appeal on June 29, 1970. Seven days previously, the Supreme Court had decided Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Since our June 29 decision had been reached without the benefit of *Maroney*, we granted petition for rehearing August 12, 1970, and directed that additional briefs be filed. We now withdraw the opinion of June 29 and substitute the following as the opinion of the Court.

For a second time James L. Pennington was convicted by a jury of violating 15 U.S.C.A., § 902(e), which makes it unlawful for a person previously convicted of a felony to transport a firearm [in this instance a .45 calibre pistol] in interstate commerce. We affirm.

At approximately 2:30 in the early morning of October 18, 1965, two Miami Beach police officers saw an automobile proceeding at a very high, unlawful rate of speed. They gave pursuit, with sirens and emergency lights, for twenty-five to thirty city blocks, during which the speed of the automobile, at times, exceeded eighty miles an hour. During the chase one of the officers got close enough to observe the license plate, from which he knew, if the plate was valid, from the presence of the letter E, that the automobile was a rental car. When the officers finally succeeded in stopping Pennington they asked him to produce his driver's license and the rental contract. He had no rental papers but did submit a duplicate driver's license issued in the State of Georgia.

He was then arrested for reckless driving.

At the second trial, on motion to suppress, Police Officer Edwin Young, in addition to the facts already recited, testified that Pennington was charged with reckless driving because his offense involved more than speeding, that is, disregarding traffic lights, improper left turns, and improper lane usage. In Dade County, if one is charged with reckless driving, leaving the scene of an accident, or driving while under the influence of intoxicants (rather than for such matters as speeding, driving without a license, or running a stop sign) the individual arrested is not released with a citation but must go to the station house and post cash collateral before being released.

The City of Miami Beach has no wreckers or parking facilities for impounded vehicles. The policy is that if one is arrested and taken to the station house to post collateral his car is impounded, a wrecker is called from a rotating list of privately operated wreckers, the contents of the car are inventoried in the presence of the owner, the list signed by the officer, and the car, with contents, then turned over to the wrecker company, from which the operator can later retrieve it.

This was the procedure followed in Pennington's case.

Pennington was under arrest, but present, when the car was checked to ascertain and inventory its contents.

Officer Young testified as follows:

"Q. What was your purpose of looking through the automobile, which resulted in the discovery of this weapon?

"A. To inventory any valuables in the vehicle.

"Q. Did you also seek to determine if there were any weapons that might have been used for escape, or to cause harm to the arresting officer?

[the form of the question was not objected to].

"A. At the time we hadn't established whose car it was, so you couldn't prove ownership, and that's correct. Yes, sir.

"Q. Then it was your further purpose in determining if there were

any indicia of ownership inside of the automobile?

"A. Yes, sir.

"Q. But the defendant was unable to produce any indicia of ownership or rental contract at the time the arrest was made; is that˙ correct?

"A. The only identification the defendant had was a duplicate license, no other papers at all on himself or in the car."

As it turned out, the car contained nothing to inventory but the pistol in question, which was found in the glove compartment by Officer Tom Wilson, who, in his patrol car, had participated in the chase which overhauled Pennington.

At a later point Officer Young testified:

"Q. Was it your only purpose then to conduct an inventory and to determine who was the owner, see if there were any ownership papers? Is that the only reason?

"A. Well, yes, sir, basically.

"Q. And then you said also to see if there were any weapons; is that right?

"A. Yes.

"Q. In other words, to protect yourself and Officer Wilson?

"A. Well, the man had acted suspiciously for some reason we did not know why at the time. We were a little leery of him.

"Q. When he stopped and you stopped him, he got out of his car and came back toward you?

"A. Yes.

"Q. Did he give you any trouble?

"A. No, sir.

"Q. He was cooperative?

"A. Yes, sir."

The testimony of Officer Wilson was substantially similar to that of Officer Young.

The pistol was taken to police headquarters and there turned over to the property custodian.

The District Court denied the motion to suppress the pistol as evidence in the case. The conviction followed. The question then, is whether the procedure by which this pistol was found and seized squares with Fourth Amendment guaranties against unreasonble searches and seizures.

We observe first that there is no claim that Pennington was arrested because the officers believed, with probable cause, that the vehicle had been stolen. With 780,000 cars stolen in this Country in 1968, the facts here might well have supplied such probable cause, but that was not the motive for the search.

Next, a search for deadly weapons was not necessary for the protection of the officers because Pennington was not within reach of the automobile and had made no move toward trying to reach it. The car and the contents, in this respect, were no longer under his immediate control, Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

The validity of a search and seizure must be decided on the facts and circumstances in each particular case, Leffler v. United States, 8 Cir., 1969, 409 F.2d 44.

There is nothing in the case now before us to indicate that the examination of the contents of Pennington's rented car was pretextual. The officers had not expected an encounter with Pennington. When he came by at a high rate of speed at 2:30 o'clock in the morning, they gave chase, with sirens and emergency lights, solely for the purpose of apprehending a traffic violator. He was not arrested for a minor traffic violation such as driving without a valid license, simple speeding, running a stop sign or like conduct. He was charged with the offense of reckless driving because the speed was accompanied by other traffic infractions, of great danger to the travelling public. The officers were not looking for contraband or for evidence of the offense of reckless driving. The appellant had already committed that offense in their presence. There is no evidence to the effect that the procedure here involved was used as a scheme for avoiding the

necessity for search warrants. If Pennington had done nothing more than to speed, or drive without a license, or run a stop sign, he would not have been arrested but merely given a citation.

Personal effects lawfully contained within lawfully impounded automobiles must be protected for the benefit of the owners. Officers cannot send property off in the custody of others without knowing what is due to be returned. The only reasonable method for the prevention of such an occurrence after a valid arrest necessitating the detention of the automobile is to inventory contents and take receipts from the person who is thereafter to be responsible. That was clearly the real purpose of the inventory here undertaken, which uncovered the pistol.

Chambers v. Maroney, supra, noted, Fn. 10, 90 S.Ct. at 1981:

> "It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and keys together at the station house."

As to automobiles in a highly mobile environment, the Courts, as in *Maroney*, are measuring reasonableness in the light of inescapable realities, see, e. g., United States v. Johnson, 5 Cir., 1969, 413 F.2d 1396 (panel) and 431 F.2d 441 (en banc).

■ This, of course, must be done with due regard for the principle that those lawfully entitled to use the public highways have a right to free passage without being subjected to unreasonable search and seizures, Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

Under the facts of this case we hold that the pistol was not the fruit of an unlawful search or seizure.

The judgment of the District Court is Affirmed.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.