**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Levy Alan KELEHAR, a/k/a James Stone, Defendant-Appellant.**

**No. 72-1396.**

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1972.

Morton A. Orbach, Miami, Fla. (court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., (Mrs.) Marsha Lyons, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

RIVES, Circuit Judge:

The defendant was charged in a two-count indictment with violating 18 U.S.C. § 472.[1] The first count charged that he passed or attempted to pass a $20.00 Federal Reserve Note, knowing the same to be counterfeit. The second count charged that he knowingly kept in his possession and concealed two counterfeit $50.00 Federal Reserve Notes. Upon arraignment the defendant entered a plea of not guilty. He then moved to suppress evidence seized upon a search of his automobile and further to suppress statements taken by police officers and by a Secret Service Agent. After a hearing, the court denied his motion to suppress upon the ground that "there is ample evidence to support that this was an inventory which was taken routinely before the car was to be towed away."

---

1. "§ 472. *Uttering counterfeit obligations or securities*

"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

The defendant then moved to withdraw his plea of not guilty and to enter a plea of nolo contendere to both counts of the indictment. The court, prior to accepting the plea of nolo contendere, stated to the defendant that such a plea "gives your lawyer the right to appeal my ruling on the motion to suppress * * *."

This appeal from the ensuing judgment of conviction raises the issue of whether the search of the defendant's automobile was legal and, hence, whether the statements taken by the police and the Secret Service Agent were the fruits of an illegal search and seizure. We decide that issue against the defendant and affirm the judgment of conviction.

On July 2, 1971, two plain clothes police officers of the City of Hollywood, Florida, received a call from headquarters to go to the Corral Bar-B-Que. There one of the officers, Mr. McMahon, was contacted by the operator of the establishment and a waitress who pointed out the defendant as the person who attempted to pass "what appeared to be a bogus $20.00 bill." Officer McMahon showed the defendant that he was a police officer and asked him to step outside where another officer was standing. Officer McMahon then advised the defendant of his constitutional rights and began questioning him about the $20.00 bill. McMahon told the defendant that "I was going to check about him," whereupon the defendant said, "You'll find I have some outstanding warrants," that they were "misdemeanor warrants, traffic warrants with Dade County." At McMahon's request, the defendant agreed to go to the police station for further investigation about the warrants.

The investigation revealed three warrants from Dade County and one from Sebring, Florida, all misdemeanor traffic warrants. The defendant was then advised that "he would be kept in custody with regard to the warrants * *. Also, we advised him we were going to contact the Treasury Department." Continuing, McMahon testified:

"Q. What else transpired?

"A. At this time, as he was being held, I went ahead and searched him. During the search I asked him to take everything out of his pockets and put it on the desk.

"Upon checking his pockets for money, I believe I found—he had a registration in his pocket, a vehicle registration. I was looking at the registration and I observed that it was issued to a Mr. Stone, and I observed the year of the vehicle, and so on and so forth.

"I then contacted my sergeant, my supervisor, Sergeant Hessler, and advised him of all that had taken place and including the possession of this registration. * * * *."

[Tr. 16, 17.]

Sergeant Hessler, in turn, testified:

" * * * * I called the manager, the person in charge of the Corral Bar-B-Que, and asked him—that was Warren Wallworth. I've known him for several years. I asked him if a car with a Hillsborough tag or from that area—and I gave him a description of the car—was parked in his parking lot. He advised me at that time that it was. He advised me that, if the individual was arrested and was going to be detained, he wanted the car removed from the premises, at which time I dispatched Officers Frazer, I believe Bomba, to have the car towed from the scene. As per our directive from the Chief of Police with regards to towing of vehicles, an inventory was made of the vehicle."

[Tr. 33.]

In response to questioning by defendant's counsel, Sergeant Hessler further testified:

"Q. Sir, wasn't it your intent to search to see if you could find any further evidence in support of your case involving counterfeit money?

"A. You use the word 'search.' I had no intentions of searching the car per se.

"Q. Let us use your word of 'inventory.' Was it your intention to inventory the car in order to determine if there was further evidence to support your case regarding the counterfeit money?

"A. Knowing what I knew at the time of counterfeit money having been passed—this is in answer to your question—there is no doubt in my mind that I had thought that as a result of an inventory, possibly something else of contraband might have been in the vehicle."

[Tr. 35.]

Sergeant Hessler instructed Police Officer Gilbert Frazer to go to Corral Bar-B-Que and inventory the vehicle prior to having it towed in. Officer Frazer found the doors of the car unlocked. On questioning by defendant's counsel, he testified:

"Q. You opened the doors to get into the vehicle; is that correct?

"A. Yes, I did.

"Q. The first thing you did was to search or inventory, as you call it?

"A. Yes. I inventoried the complete vehicle.

"Q. Including lifting up the floor mats; is that correct?

"A. No, I didn't do that. The corner of the floor mat was open and there was money protruding from the floor mat. I did lift it up once I seen the money. Yes, I did do it then. However, this was good money, this was U. S. currency.

"Q. You found some good money under a floor mat?

"A. Under the floor mat, yes, sir.

"Q. You also found two $50 bills that were alleged to be counterfeit; is that correct?

"A. Yes, sir, I did."

[Tr. 25, 26.] He further testified that the inventory was required by a police department regulation and that he followed the prescribed inventory form.

We need not decide whether passing or attempting to pass a counterfeit bill, without some indication of guilty knowledge, is sufficient probable cause to arrest,[2] because the defendant's initial arrest was justified by the four outstanding misdemeanor traffic warrants. Florida Statutes 901.15(4), F.S.A., provides that, "A peace officer may arrest a person without a warrant when: * * * (4) A warrant for the arrest has been issued and is held by another peace officer for execution."

The subsequent search of defendant's car was in compliance with standard inventory procedure, fulfilling the two-fold purpose of protecting the defendant's property and safeguarding the police from groundless claims for "lost" possessions.[3] Clearly, inventorying the contents of the car was not a mere pretext for searching, though the finding of contraband was not unexpected.

True, the defendant was not in the automobile when he was approached by Officer McMahon. After the defendant was arrested, however, it was reasonable for the police officers to comply with the request of the manager of the Corral Bar-B-Que to remove the car from his premises, not only for his convenience but to protect the defendant's automobile. Before having the car towed from the scene and properly stored, the police directive required that its contents be inventoried. The search was within the bounds of standard inventory procedure. The judgment is therefore

Affirmed.

2. See Cuozzo v. United States, 5 Cir. 1963, 325 F.2d 274; Davida v. United States, 10 Cir. 1970, 422 F.2d 528; United States v. Ayers, 2 Cir. 1970, 426 F.2d 524.

3. See Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, 800, 801; United States v. Pennington, 5 Cir. 1971, 441 F.2d 249, 252; United States v. Edwards, 5 Cir. 1971, 441 F.2d 749, 755.