**UNITED STATES of America,**
**Appellant,**

**v.**

**Sam Meredith LAWSON, Appellee.**

**No. 73–1161.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Nov. 14, 1973.

David Gienapp, Asst. U. S. Atty., Sioux Falls, S. D., for appellant.

R. Murray Ogborn, Aberdeen, S. D., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and SMITH,* Senior District Judge.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

GIBSON, Circuit Judge.

The Government appeals, pursuant to 18 U.S.C. § 3731, from an order of the District Court, entered after a hearing,[1] granting the defendant's motion to suppress all evidence obtained as a result of an inventory search of an automobile. This is a case of first impression in this Circuit, presenting the question of the validity of an inventory search of an impounded vehicle.

The defendant, Sam Lawson, and a traveling companion, Lelia Fawcett, were arrested January 18, 1972, by local police officers in Aberdeen, South Dakota, on separate charges of passing insufficient funds checks. They had traveled to Aberdeen in Mrs. Fawcett's 1969 Ford, which bore Maryland license plates. At the time of their arrest, the car was parked in the Holiday Inn Motel parking lot in Aberdeen with its doors and trunk locked. It was impounded and taken to the police station. The next day, January 19th, pursuant to a written regulation of the Aberdeen Police Department,[2] the car was completely searched for the purpose of preparing an inventory of the contents and placing any "valuables" in storage. During the course of this inventory, a .22 caliber revolver was found in the locked trunk of

the car, which led to the filing of the two count federal indictment in this case. Count I charged the defendant with unlawfully transporting a stolen firearm in interstate commerce in violation of 18 U.S.C. § 922(i), and count II charged that defendant, a convicted felon, had transported a firearm from West Virginia to Aberdeen, South Dakota, in violation of 18 U.S.C. § 922(g).

There is no assertion that the search in this case can be justified upon any ground other than as an inventory search. The Government specifically disavows any contention that the search was incident to a lawful arrest, and it is equally clear from the record that there existed no probable cause to support a search of the locked trunk. Rather, the Government argues that the search and seizure should be upheld because, "[t]he discovery of the firearm was made while the Police Officers were following a legitimate, reasonable and necessary police function." The Government argues that when the inventory is carried out pursuant to a standard uniform procedure, it is reasonable; thus the evidence seized should be admissible. This position finds support in the language of some of the cases that have considered the problem of an inventory search.[3] However,

---

1. The United States District Court for the District of South Dakota, the Honorable Axel J. Beck presided. The Decision and Order of the District Court is reported at 355 F.Supp. 101 (D.S.D.1973).

2. The regulation in effect at the time of defendant's arrest reads as follows:

Since the Aberdeen Police Department is directly responsible for all personal property seized, impounded and taken under our control, it is necessary for us to take reasonable care to guarantee its safe return to its proper owner. As the Police Department is liable for loss or theft of this personal property it becomes necessary for us to inventory the property in order to protect the Police Department and the City of Aberdeen against any false claims for loss or theft.

When the Operator of a vehicle is arrested, his vehicle shall be driven or towed to the Police Department. Those items considered "valuables" shall be removed, inventoried and placed in the property room

for safe keeping. This shall include items not attached to the vehicle and are practical in size, weight and quantity to be so removed and stored.

3. *See*, United States v. Kelehar, 470 F.2d 176 (5th Cir. 1972); United States v. Mitchell, 458 F.2d 960 (9th Cir. 1972); United States v. Pennington, 441 F.2d 249 (5th Cir.), cert. denied, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); United States v. Boyd, 436 F.2d 1203 (5th Cir. 1971); People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S. 2d 945, 272 N.E.2d 464 (1971); Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971), cert. denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); State v. Wallen, 185 Neb. 44, 173 N.W.2d 372, cert. denied, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968); Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967); St. Clair v. State, 1 Md.App. 605, 323 A.2d 565 (1967).

the contrary position, that an inventory search is unreasonable, has been taken by other courts.[4]

The problem of automobile searches and their relationship to the warrant requirements of the Fourth Amendment has been a perplexing one for the courts. Without the assistance of definitive guidelines (indeed guidelines attempting to apply the general requirements of the Fourth Amendment in this area are likely to be of little assistance in the varying factual circumstances presented by concrete cases), the courts have attempted to apply general Fourth Amendment principles, assisted by what applicable language they could discern from the Supreme Court cases, to resolve situations probably never contemplated by the drafters of the Fourth Amendment or the courts. Lower courts have been hampered in this process by a seeming lack of consistency in the Supreme Court cases dealing with automobile searches, the inconsistencies no doubt being due to the manifold considerations that bear with unequal weight on varying aspects of the problem. This was recognized by Justice Rehnquist, writing for the majority in Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973):

> While these general principles are easily stated, the decisions of this Court, dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web.

The Supreme Court has not decided whether an inventory search, without a warrant or justified by a recognized exception to the warrant requirement, would be considered reasonable under the Fourth Amendment. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) explicitly stated that the "admissibility of evidence found as a result of a search under the police regulation is not presented by this case."

The Supreme Court decision most nearly in point is Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), where the Court invalidated a search, made by state officers, after the defendant's arrest on a charge of vagrancy. The car had been towed to a garage and after booking the defendant, the car was searched and items seized which were sought to be introduced as evidence in a federal trial for conspiracy to rob a federally-insured bank. A unanimous Court held that the search and seizure without a warrant did not meet the test of reasonableness under the Fourth Amendment. Subsequent cases have indicated that *Preston* should be narrowly read to indicate only that the search involved there could not be justified as incident to a lawful arrest, not that it would be unreasonable in all circumstances.[5] *Preston* does, however, seem to establish a requirement that the arrest and a subsequent search be reasonably related. As noted by Mr. Justice Black in Cooper v. California, 386 U.S. 58, 61, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967):

> Preston was arrested for vagrancy. An arresting officer took his car to the station rather than just leaving it on the street. It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it. The fact that

---

4. *See,* Williams v. United States, 412 F.2d 729 (5th Cir. 1969); Dodge v. Turner, 274 F.Supp. 285 (D.Utah 1967); Boulet v. State, 17 Ariz.App. 64, 495 P.2d 504 (1972); Mozzetti v. Superior Court, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971) (overruling prior California decisions to the contrary); Mayfield v. United States, 276 A.2d 123 (D.C.App.1971).

For a more extended discussion of the cases in this area see Annot., 48 A.L.R.3d 537 (1973).

5. Cooper v. California, 386 U.S. 58, 59–60, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Cady v. Dombrowski, *supra* at 433 of 413 U.S., 93 S.Ct. 2523.

the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car.

See also Williams v. United States, 412 F.2d 729, 732 (5th Cir. 1969).

Our instant case is quite similar to *Preston*. Here Lawson was arrested on a bad check charge. The officers took his car to the station, rather than leaving it parked at the Holiday Inn parking lot. There is no suggestion that the police had the right to impound the car. However, in view of the holding that *Preston* stands only for the proposition that the search there could not be justified as incident to a lawful arrest, Cady v. Dombrowski, *supra* at 446 of 413, 93 S.Ct. 2523, we must look further and see whether the fact that the search and seizure here was done as a "legitimate police function" establishes its reasonableness under the Fourth Amendment.

The Government argues that *Cady* supports the use of inventory procedures. *Cady* approved a search for a revolver upon a showing that it was that department's standard procedure; it is argued that we should approve the inventory in this case because it is the Aberdeen Police Department's standard procedure to inventory impounded automobiles. This argument ignores the Court's emphasis on the factual considerations present in *Cady* and absent here. First, the vehicle in *Cady* was disabled as the result of an accident and constituted a nuisance along the highway. The driver, being intoxicated and later comatose, could not have made arrangements to have the car towed and stored. Second, the police made a search for the revolver as a standard procedure to protect the public from the possibility that a revolver might fall into untrained or malicious hands. The motorist in *Cady* was a Chicago policeman. The police of Kewaskum, Wisconsin, believed he was required by regulation to carry his service revolver at all times. They therefore had reason to believe that the automobile contained the

revolver when it was not found on his person. In the instant case, the vehicle was not disabled, nor was it in a position where it could be considered a public nuisance. There is no indication that Lawson, or Mrs. Fawcett, could not have made arrangements for the safekeeping of the vehicle during the time they were in custody. Secondly, there was no reason for the Aberdeen police to believe that the car contained anything that might threaten the safety of the public.

The Government relies also on *Harris* and *Cooper* to support their argument. In *Harris*, evidence in plain view of a police officer, who was taking reasonable steps for the protection of the car, was held admissible. This irrefragably permissible police conduct certainly cannot be equated with breaking into a locked trunk, even though both actions are said to be taken for the protection of the owner's property. *Cooper* also is a different case than what we have here. The automobile in *Cooper* was seized pursuant to statute specifying forfeiture of the car for its unlawful use. There was a close relationship between the reason for the arrest and the search, as well as the reason the vehicle was in custody. *See,* United States v. Young, 456 F.2d 872, 875 (8th Cir. 1972). None of these considerations are applicable here. Therefore the decision in this case must depend upon an analysis of the "reasonableness" of the search here in question.

We note first that several state courts have concluded that an inventory examination is not a search. People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971); State v. Wallen, 185 Neb. 44, 173 N.W.2d 372, cert. denied, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970). *Sullivan* places reliance upon a draft of the Model Code of Pre-Arraignment Procedure of the American Law Institute, which defines a "search" as an intrusion under color of authority on an individual's vehicle for the purpose of seizing things. Under this view law enforcement officials would have a right to intrude so long as they did not

intend to seize anything. There was a strong dissent by Chief Judge Fuld in the case. In *Wallen,* the Nebraska Supreme Court determined there was no search. It concluded this based upon the fact that "there was no reason to search," and "there was not even a basis existing for obtaining a search warrant." *Wallen,* 173 N.W.2d at 376. Therefore, the officer's inventory could not be a search. This seems a highly anomalous position. Officers apparently are to be placed in a better position when they have no reason to search, since then a general exploratory "inventory" will be upheld; while if required to get a warrant they would have to describe with particularity the things to be seized. Both of the above decisions are based upon a highly technical construction of the meaning of "search," unwarranted in our view of the Fourth Amendment. To consider an inventory procedure not to be a "search" does violence to the concept of the Fourth Amendment as a protection of the privacy of the citizenry against unwarranted invasion by government officials. As noted in Terry v. Ohio, 392 U.S. 1, 18 n. 15, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968):

> In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. * * *
> This seems preferable to an approach which attributes too much significance to an overly technical definition of "search" * * *.

See also, Camara v. Municipal Court, 387 U.S. 523, 530, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930 (1967):

> It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.

The Supreme Court has not decided whether an inventory procedure is a search. In Cady v. Dombrowski, *supra,* a footnote to the majority opinion noted the question and stated it would not decide the issue as petitioner had conceded the intrusion constituted a search. Harris v. United States, *supra,* indicates that it would be regarded as a search.[6] The police procedure involved in this case, be it denominated an "inventory" or a "search," involves a substantial invasion of the owner's privacy. To suggest that the exploration of the owner's property by the police, merely because it happens to be in the custody of the police is not a search would substantially erode Fourth Amendment protections. "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 403 U.S. 443, 461–462, 91 S.Ct. 2022, 2035, 29 L. Ed.2d 564 (1971). The operation or possession of an automobile does not destroy a person's right to keep property contained therein free from unreasonable searches and seizures, even though we realize this interest need not and has not been given the same protection as property contained within a dwelling. We therefore hold that the police inventory procedure herein utilized is a search, subject to the requirement of reasonableness, within the meaning of the Fourth Amendment.

The starting point for any analysis of the reasonableness of the search involved here must be the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describ-

6. "The admissability of evidence found as a result of a *search* under the police regulation is not presented by this case." 390 U. S. at 236, 88 S.Ct. at 993. (emphasis supplied).

ing the place to be searched, and the persons or things to be seized.

Warrantless searches are *per se* unreasonable except for a few well-delineated exceptions. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). The automobile has, however, been treated somewhat differently than other types of property; "for purposes of the Fourth Amendment there is a constitutional difference between houses and cars." Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). The distinctions stem from both the highly mobile character of the automobile and the fact that, "the extensive, and often non-criminal contact with automobiles * * * will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." Cady v. Dombrowski, *supra* at 442 of 413 U.S., at 2528 of 93 S.Ct.

The standard for testing the validity of a search of a motor vehicle is whether the search was reasonable under all circumstances. Preston v. United States, *supra* at 367 of 376 U.S., 84 S.Ct. 881. When dealing with automobile searches, two exceptions to the warrant requirement have received general recognition: (1) a search incident to a valid arrest, Preston v. United States, *supra;* Coolidge v. New Hampshire, *supra* and (2) a right to search when there is probable cause to believe that the vehicle is carrying contraband or fruits or instrumentalities of a crime. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). When determining the legality of an automobile search, a court must determine its reasonableness under all the circumstances presented; a search which is determined to be reasonable will not be held invalid for the failure to obtain a warrant, even if it would have been practical to do so. Cooper v. California, *supra* at 62 of 386 U.S., 87 S.Ct. 788.

Mindful of the foregoing general principles, we turn to the determination of the reasonableness of the inventory search in this case. The Fifth Circuit has considered the question of inventory searches of automobiles in a line of cases beginning with Williams v. United States, 412 F.2d 729 (5th Cir. 1969). In *Williams*, the defendant had been arrested for vagrancy. A search of the trunk of a car, in which the defendant asserted a possessory interest, led to the discovery of blank money orders, two check writing machines, and a revolver which were admitted at his federal trial on Dyer Act charges. The court held that the evidence must be suppressed. Faced with the argument that there was a general police policy to search all impounded cars, the court said:

> In fact, the reason given for the search—that the police searched all impounded cars—was so vague that it could not be specifically related to anything and could not justify any warrantless search. * * * This policy of making a general search was not specifically related to the reason the car was impounded and, as we interpret the cases, will not pass muster.

412 F.2d at 735.

In the next Fifth Circuit case, United States v. Boyd, 436 F.2d 1203 (5th Cir. 1971), the defendant was arrested after a chase and collision which wrecked his vehicle. During the course of a search a large quantity of stolen money orders was found. The court refused to order suppression, finding probable cause to search the vehicle, and holding: "[e]vidence discovered as a result of this necessary inventory was therefore admissible at the defendant's trial." 436 F.2d at 1205. Three months later, in United States v. Pennington, 441 F.2d 249 (5th Cir. 1971), the court declined to order suppression of a pistol discovered in the glove compartment of an automobile during an inventory search. The defendant had been arrested on reckless driving charges. It reasoned:

> Personal effects lawfully contained within lawfully impounded automo-

biles must be protected for the benefit of the owners. Officers cannot send property off in the custody of others without knowing what is due to be returned. The only reasonable method for the prevention of such an occurrence after a valid arrest necessitating the detention of the automobile is to inventory contents and take receipts from the person who is thereafter to be responsible. That was clearly the real purpose of the inventory here undertaken, which uncovered the pistol.

441 F.2d at 252.

The latest Fifth Circuit case is United States v. Kelehar, 470 F.2d 176 (5th Cir. 1972). The defendant was arrested on outstanding misdemeanor traffic warrants, although he was being questioned regarding suspected counterfeit money. An inventory search of his car turned up evidence used against him in a subsequent counterfeiting prosecution. The court validated ·the inventory search, concluding:

The subsequent search of defendant's car was in compliance with standard inventory procedure, fulfilling the two-fold purpose of protecting the defendant's property and safeguarding the police from groundless claims for "lost" possessions.

470 F.2d at 178.

Neither *Boyd, Pennington,* nor *Kelehar* mentioned the prior decision in United States v. Williams, *supra.*[7] Nor do they appear to have given consideration to the scope of the intrusion involved in the particular cases as measured by the exigencies of the situation. Rather, they appear to weigh heavily the asserted need to inventory to the exclusion of Fourth Amendment considerations. The Fourth Amendment requires courts to "focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of private citizens." Camara

v. Municipal Court, *supra* at 534–535 of 387 U.S., at 1734 of 87 S.Ct.

This approach, of necessity, requires a balancing of the need to search in a particular case against the scope of the particular intrusion.

The Ninth Circuit is the only other circuit to have considered the question. In United States v. Mitchell, 458 F.2d 960 (9th Cir. 1972), the defendant was arrested for speeding. A patrolman was instructed to take his car to the impounding lot. While driving the car to the lot, the officer observed a partially opened sample case on the floor, and apparently valuable watches on the seat and floor around the case. After arriving at the lot, and in the course of placing the loose watches in the case, he noticed a weapon in the case. The admission of this weapon at trial for possession of a weapon by a convicted felon was upheld. The court said:

Here, there was arguably no search; and, if there was, it was a reasonable effort to safeguard the property of the owner of the vehicle and the interest of the city in protecting itself against false claims.

458 F.2d at 963.

However, the court made it clear that it was not considering the question of whether evidence taken during a search of a closed briefcase or locked trunk would be admissible. *Mitchell, supra* at 962. It seems clear that the seizure in *Mitchell* can be justified by Harris v. United States, *supra.* When reasonable measures are taken for the protection of the car itself, and evidence falls into plain view during the course of these measures, a seizure of that evidence will not be unreasonable under the Fourth Amendment. There was a strong dissent directed to the inventory search issue in which it was reasoned:

To the extent that such inventories are allowed, the privacy of drivers is sacrificed. Rights are accorded to the

---

7. In United States v. Colbert, 474 F.2d 174 (5th Cir., *en banc* 1973), *Williams* was stated to no longer be viable authority in the Fifth Circuit on the issue of standing to challenge a search and seizure. On the issue of inventory searches it has probably been sub silentio overruled by the later cases noted in this opinion.

police while, at the same time, more fundamental rights are withdrawn from others. Government interests, vis-a-vis those of our citizens, are not necessarily supreme.

458 F.2d at 965.

The reasoning of the cases upholding inventory searches has been, except where not calling the procedure a search, that the police procedure is a reasonable one to protect the valuable property of an accused while in custody and to protect the police departments from groundless claims for "lost" property.[8] The soundness of this conclusion has been questioned.[9]

■ Moreover, such a conclusion does not seem adequate to justify the substantial invasion of Fourth Amendment protections involved here. The essential test of the validity of a search is reasonableness, yet the standard of reasonableness must be evolved in light of the Fourth Amendment, not in light of what our view of reasonable police procedures might be. In addressing itself to a contention that it was reasonable to search an entire house without a warrant when a suspect is arrested in the house, the Supreme Court said in Chimel v. California, 395 U.S. 752, 764–765, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685 (1969):

> But that argument is founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests. Under such an unconfined analysis, Fourth Amendment protection in this area would reach the evaporation point.

We think this is a persuasive refutation of the Government's argument that because it is a "reasonable" police procedure it should be upheld under the Fourth Amendment. Obviously the police have an interest in safeguarding themselves against groundless claims. Just as obviously, and more importantly in terms of the Fourth Amendment, owners and operators of motor vehicles have an interest in safeguarding their possessions from unreasonable police intrusions. A rule that upon a showing of a legitimate governmental interest, the constitutional protections of citizens must give way, would eliminate those protections in the very situations for which they were intended. For the police practice considered here to be found reasonable under the Fourth Amendment, absent a warrant or falling within a recognized exception to the warrant requirement, there must be a minimal interference with the individual's protected rights. A police duty to safeguard the owner's property does not automatically give the police the right to search.

> "[L]awful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it," * * * the reason for and the nature of the custody may constitutionally justify the search.

Cooper v. California, *supra* at 61 of 386 U.S., at 791 of 87 S.Ct.

■ It is unnecessary for us to determine all the reasons for, and natures of police custody that might justify a search; here the only justification for the search is bare police custody of the vehicle. While police custody may justify reasonable measures to protect the vehicle itself (*i. e.*, rolling up the windows and locking the doors), or property within plain view in the automobile, such reasonable protective measures do not extend to breaking into a locked trunk. We find ourselves in agreement

---

8. *See e. g.*, United States v. Kelehar, *supra* at 178 of 470 F.2d; State v. Montague, 438 P.2d at 574; State v. Wallen, 173 N.W.2d at 374.

9. Boulet v. State, 495 P.2d at 508–509; Mozzetti v. Superior Court, 94 Cal.Rptr. at 417–418, 484 P.2d at 89–90. *See also* Szwajkowski, The Aftermath of Cooper v. California, 1968 U.Ill.L.F. 401, 407–408 (1968); Nelson, Chimel v. California, A Potential Roadblock to Vehicle Searches; 17 U.C.L.A. L.Rev. 626, 642 (1970).

with the position taken by the California Supreme Court in addressing the contention that the inventory procedures are necessary and reasonable:

> This contention is rebutted by recognition of the vehicle owner's countervailing interest in maintaining the privacy of his personal effects and preventing anyone, including the police, from searching suitcases, and other closed containers and areas in his automobile at the time the police lawfully remove it to storage. In weighing the necessity of the inventory search as protection of the owner's property against the owner's rights under the Fourth Amendment, we observe that items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property.

Mozzetti v. Superior Court, 94 Cal.Rptr. at 417, 484 P.2d at 89; *accord* Boulet v. State, 495 P.2d at 509.

It is not as obvious to us, as it appears to be to some courts, why the inventory procedure offers the police any more protection against false claims than would a standard policy of locking the car and returning the keys to the owner; or of allowing the owner to make arrangements himself for the removal and storage of his vehicle.

■ We agree with the District Court that the search of the automobile and seizure of the revolver was unreasonable. It was not justified by a warrant or any exception to the warrant requirement, nor do we wish to create an exception · for what might be called "searches incident to police custody and control." If such an exception is to be created, we feel that it should be done by the Supreme Court. In so holding, we do not formulate a rule that every inventory search is *per se* unreasonable. However, we do think that the fact such a search is made pursuant to a police regulation should have no bearing in determining whether the search is reasonable under all circumstances.[10]

Several approaches to the inventory search problem have been suggested.[11] Some of the possible approaches, as already noted in this opinion, do not properly focus on the considerations important in this area. One possible approach would be to declare all inventory searches reasonable. This would not comport with our view of the Fourth Amendment protections against unreasonable searches and seizures. Another, as suggested in Mayfield v. United States, 276 A.2d 123 (D.C.App.1971), and noted approvingly by Judge Ely in his dissent in United States v. Mitchell, *supra* at 966 of 458 F.2d, would be to allow the police to inventory, but require suppression of any evidence obtained as a result of the inventory. Such an approach, while perhaps possessing some appeal, conflicts with the underlying rationale of the Fourth Amendment. It is the search and seizure itself which must be determined reasonable, not the subsequent use of evidence obtained to secure conviction of a crime. This approach would abandon the Fourth Amendment as a

---

10. "Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not. expressly authorized by state law be justified as a constitutionally reasonable one." Cooper v. California, *supra* at 61 of 386 U.S., at 790 of 87 S.Ct.

We think the same reasoning is equally applicable to a search made pursuant to a police department regulation.

11. *See*, Miles and Wefing, The Automobile Search and the Fourth Amendment: A Troubled Relationship, 4 Seton Hall L.Rev. 105 (1972); Nelson, *supra* n. 9; Szwajkowski, *supra* n. 9; Comment, Police Inventories of the Contents of Vehicles and the Exclusionary Rule, 29 Wash. & Lee L.Rev. 197 (1972); Comment, The Inventory Search of an Impounded Vehicle, 48 Chi-Kent L.Rev. 48 (1971); Note, The Inventory Search of An Automobile, 7 U.Rich.L.Rev. 151 (1972).

protection against invasion of privacy by government officials.

Another approach, which we consider but do not adopt, would be to declare all inventory searches unreasonable. Just as we do not view all inventory searches as reasonable, to enunciate a rule holding them all unreasonable would often ignore legitimate reasons that could exist in particular cases to uphold an inventory search.

We think the proper approach in this area is to assess the reasonableness of the police conduct in light of all the circumstances of the case, without giving effect to the presence or absence of a police regulation. This approach does not have the surety of a rule declaring all inventory searches to be reasonable or unreasonable, and must to some extent leave law enforcement officials with some uncertainty as to what will be considered reasonable or unreasonable. This, however, appears to be a fact of life when dealing with Fourth Amendment problems in a variety of contexts. When unsure as to the legality of their contemplated conduct, it is always open to the police to attempt to secure a warrant in order to have a prior judicial determination of the reasonableness of their proposed conduct, though in many instances the exigencies of the situation may preclude such a course. We do not believe it possible for this court to settle this area of the law. We do think, however, that it should only be in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner or operator of a vehicle may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment in that instance, unless, of course, the automobile has been impounded as evidence, or pursuant to a forfeiture statute. If the impounding is done for the stated reason, the protection of the owner's property, it is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. In cases where the owner or operator cannot make his wishes known, whether because of incapacity or absence (*i. e.*, a parking violation), in most instances the property would be adequately safeguarded by rolling up the windows and locking the doors, subject, of course, to reasonable steps to safeguard property in plain view within the automobile. We think such a standard procedure would insure as well as an inventory protection against groundless claims for lost property. In the instant case, it is hard to see, when the car was locked and the windows rolled up at the time it was impounded, how the property is better safeguarded by a breaking into the car and locked trunk to inventory. In many cases, the value of the property "safeguarded" by these actions would be less than the damage caused to the automobile by these "protective" measures.

The case before us is not the atypical case that would support an inventory search. No justification, except police custody of the vehicle, has been advanced or is supportable on the record to validate the warrantless search of the locked trunk of the vehicle. The search was therefore unreasonable. The judgment of the District Court suppressing the revolver found during the search is affirmed.