THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY VICTOR CLARK, Defendant-Appellant.

(No. 12662;

Fourth District—October 30, 1975.

CRAVEN, J., dissenting.

Richard J. Wilson, Daniel D. Yuhas, and Joshua Sachs, all of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert I. Wrigley, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction of forgery by bench trial and the sentence of one to three years imposed.

Upon appeal defendant contends that certain stolen blank checks were taken from the glove compartment of his car in an illegal search and seizure, and that his written confession to forgery was the product of such unlawful search.

The proceedings upon the motion to suppress evidence disclose that defendant was driving with his codefendant in an automobile which broke down and stopped in the traffic lane of an arterial street. The arresting officer came to the scene as defendant's car was being pushed.

Such officer observed open beer cans on the floor of the driving compartment and upon his inquiry neither defendant nor his companion could produce an operator's license. The officer thereupon arrested each for failure to have an operator's license and for illegal transportation of liquor. Such offenses support custodial arrest and defendant and his companion were removed in a police vehicle. Defendant did not request that his automobile be placed in the possession of any other person.

The evidence is clear that the automobile was inoperable as it stood in the street. The arresting officer called a commercial towing service to remove the car and, it appears, to store the car. There was no contention that the city had an impounding lot or police garage. The towing procedure requires that the operator be able to enter the towed vehicle. After the arrival of the tow truck but prior to the removal of the car the arresting officer examined the interior and discovered several blank checks stolen from a business firm.

There is no contention that the search of the vehicle was incident to an arrest or that there was either a warrant or permission to search, but the prosecution urges that the search procedure was reasonable under the circumstances. The testimony of the arresting officer is that such examination was a regular police procedure under circumstances requiring the removal of a vehicle in the absence of the owner. The stated purpose was to protect items of value which might be left in the car and to avoid spurious claims for articles which might be alleged to have been left in the car.

The standard for determining the validity of the search of a motor vehicle is whether the search was reasonable under the circumstances. (*Cooper v. California*, 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788; *Preston v. United States*, 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881.) As stated in *Harris v. United States*, 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992, initial intrusion into a car to protect the owner's property is not unreasonable. The courts of Illinois have had no occasion to consider the issue of the reasonableness of inventory searches of automobiles. Other jurisdictions have reached differing conclusions.

Many have held that an inspection of the contents of the vehicle properly taken under temporary control to be proper and valid. (See cases collected in *United States v. Mitchell* (9th Cir. 1972), 458 F.2d 960.) In *United States v. Pennington* (5th Cir. 1971), 441 F.2d 249, the driver was taken into mandatory custody. The city had no municipal towing service and no impoundment area. The inventory search pursuant to police regulation disclosed a pistol in the glove compartment of the car. It was argued that the search was illegal as it was not required to protect the officer. The court affirmed an order denying the

dismissal of the complaint saying that the officer cannot send property into the custody of others without knowing what was to be returned. In *People v. Sullivan* (1971), 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464, the court of appeals reversed an order dismissing the indictment. The vehicle was towed and impounded for a parking violation. Regulations required an inspection for valuable items and the making of an adequate record of the contents. The officer found a loaded pistol in a brief case. The court noted the language of *Cooper v. California*, that the reason for and the nature of the custody may constitutionally justify the search, and concluded that the examination was not unreasonable. Similar conclusions were reached in *State v. Montague* (1968), 73 Wash. 2d 381, 438 P.2d 571; *State v. Criscola* (1968), 21 Utah 2d 272, 444 P.2d 517; *St. Clair v. State* (1967), 1 Md.App. 605, 232 A.2d 565.

Searches of this quality have been upheld in *United States v. Kelehar* (5th Cir. 1972), 470 F.2d 176, and *United States v. Lipscomb* (5th Cir. 1970), 435 F.2d 795, while a contrary conclusion was reached in *United States v. Lawson* (8th Cir. 1973), 487 F.2d 468.

Defendant urges that this court adopt the views expressed in *Mozzetti v. Superior Court* (1971), 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84; *Boulet v. Arizona* (1972), 17 Ariz.App. 64, 495 P.2d 504; *State v. Opperman* (S.Dak. 1975), 228 N.W.2d 152, and *United States v. Lawson* (8th Cir. 1973), 487 F.2d 468.

■■ The facts in such cases contain clearly distinguishable differences from the facts at issue here. *Mozzetti* dealt with the examination of a closed suitcase which was contained in the car examined and such examination was the actual issue. (See Burke concurring opinion.) As we read *Mozzetti*, it would be proper to examine the interior of the vehicle for contents which should properly be secured. *Boulet* adopts the conclusion of *Mozzetti*, but in such case the issue was the examination of the contents of a closed shaving kit. That opinion includes the doubtful language that it could not be discerned how it was necessary to open suitcases, brief cases or sealed packages which could be placed in a locked trunk. A particularly notable difference found in *Mozzetti* is that the vehicle was to be kept in a police garage. In *Opperman*, a closed and locked vehicle had accumulated several parking tickets as it stood on the street. It was neither a hazard nor a nuisance which required removal. Towed and impounded, an officer procured the opening of the locked car for an examination of the contents and the inventory. Such case contains neither factors of exigency nor protection of the contents for the benefit of either the owner or the police. Similarly, in *United States v. Lawson*, defendant was arrested. His locked automobile was then parked at a motel. The car was impounded and taken to the police station where it was completely searched and items seized were taken

from a locked trunk. Adopting the test of balancing of the need to search in a particular case against the scope of a primary intrusion, the court concluded that the search was not reasonable for the police were not required to protect the car or move it as a nuisance, and that there was no reason for impoundment. Upon the facts of this case we conclude that the search was a reasonable and proper search.

The determination that the search was reasonable disposes of defendant's argument made here that the confession was a product of an unlawful search. We note that the motion to suppress the confession filed contemporaneously with the motion to suppress evidence illegally seized, and the evidence which defendant introduced at the hearing on the motion to suppress the confession was directed to a different issue, i.e., that defendant's confession was induced by assertions that an interviewing officer told defendant that the police wished to clear the record of an insignificant offense. There is no issue of the giving of the *Miranda* warnings. In summary, the State's evidence denies both the making of any promise and the making of any statement that the police merely wished to clear the record of this forgery charge. The evidence of the officer to whom the confession was made is that defendant initially sought to inculpate his codefendant, Standerfer, but that when informed that defendant was to be returned to Missouri on a pending charge he was motivated and desired to exculpate Standerfer. The officer's testimony is corroborated by the last sentence written in the hand of the defendant, "Ray Standerfer did not have anything to do with the cashing of the check it was my idea."

■■ The finding of the trial court that the confession was voluntary and that it was not induced by any promise by the police was not error under the evidence.

The judgment is affirmed.

Affirmed.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

In April 1972, defendant was driving through Decatur, Illinois, with another person as a passenger in his car. His car had mechanical difficulties; he got out to look under the hood of the car; and a trucker stopped, apparently to render assistance. Later, a police officer stopped, asked other people to leave; he then asked the defendant for his driver's license. The defendant was unable to produce a driver's license. According to the defendant, the officer saw some beer in the car and the defendant thereupon was arrested for the illegal possession of liquor

and for failure to have a valid driver's license. The officer then looked in the car for alcohol and found two cans of beer in front. and four cans in the back of the car. The defendant did not give the officer permission to search the car and the officer did not have a warrant for the search of the car.

According to the testimony of the police officer, he asked the defendant to produce a driver's license or a registration. The defendant could not and the officer then arrested the defendant in connection with the discovered beer and the failure to have a license. The officer testified that he did not have the defendant's consent to search the car. The defendant did not ask him to call anyone to take custody of the car and there was no one to take charge of the car which was in traffic. The officer called a commercial towing service to take the car. The defendant had previously been removed from the scene by reason of his admittedly valid arrest. After the commercial towing service arrived, the officer made a search of the automobile and in the process found some blank checks, imprinted with the name of the defendant's employer, in the closed glove compartment. The officer testified as to a policy of searching automobiles under such circumstances to keep any valuables that may have been left in the car from being stolen, or to avoid any subsequent allegations of missing valuables that may have been in the car.

The defendant filed a motion to suppress, asserting the invalidity of the search. After a hearing, the trial court denied the motion to suppress the discovered evidence and to suppress a confession of the defendant admittedly obtained as a result of the evidence found in the glove compartment. Thereafter, a bench trial resulted in a finding of guilty of forgery. The defendant was sentenced on March 7, 1974, to a term of not less than 1 nor more than 3 years. We now process the appeal, the notice of appeal having been filed on April 5, 1974.

The problem for resolution here is the validity of the search of an automobile for the alleged purpose of making an inventory under circumstances where there is no warrant and no probable cause for the search. It seems clear to me that what was done here by the police authority constituted an intrusion into the private property of an individual and that such intrusion is a search. Such search, even if for a benevolent purpose, is not exempt from the constitutional requirements of the fourth amendment merely because the search is not made for the express purpose of finding evidence of a crime. The stated purpose of the police to make inventory searches for protection of the property or avoidance of accusation with reference to lost or stolen property has been discussed and such reasons do not persuade that the search is lawful. An inventory search is hardly conclusive in a civil action for loss

of property from the vehicle since the article might be stolen before the inventory or omitted from the inventory. The inventory is prepared by the police and is a self-serving document and can hardly be binding upon a claimant. (See 1968 U. Ill. L. F. 401, 407-08; also 17 U.C.L.A. L.Rev. 626 (1970).) In the last cited article, the author observed that a person arrested should be allowed to assume the risk of loss of property and that even when a car must be impounded, it is unreasonable to think that the owner would exchange his fourth amendment rights for unwanted protection against theft. The author concluded that the assertion that a benevolent purpose justifies an inventory search "turns the Fourth Amendment on its head." See Annot., 48 A.L.R.3d 537 *et seq.* (1973).

The standard for determining the validity for a search of a motor vehicle is whether that search was reasonable under the circumstances. (*Cooper v. California,* 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788; 17 L.Ed.2d 730; *Preston v. United States,* 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881.) As the majority states, courts have reached differing conclusions with regard to the reasonableness of inventory searches of automobiles in police custody.

The Eighth Circuit in *United States v. Lawson* said:

"While police custody may justify reasonable measures to protect the vehicle itself (*i.e.,* rolling up the windows and locking the doors), or property within plain view in the automobile, such reasonable protective measures do not extend to breaking into a locked trunk." (*Lawson,* 487 F.2d 468, 475.)

While the police conduct in searching the glove compartment of defendant's car in the instant case was not as extreme as breaking into a locked trunk, neither could it be characterized as a means of protecting the vehicle itself or property within plain view.

In *Lawson,* the Eighth Circuit referred favorably to two State court cases condemning non-probable cause inventory searches of cars. In *Mozzetti,* the court rejected the argument that these searches protect both the car owner and the police, saying:

"In weighing the necessity of the inventory search as protection of the owner's property against the owner's rights under the Fourth Amendment, we observe that items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property." (4 Cal.3d 699, 707, 484 P.2d 84, 89, 94 Cal. Rptr. 412, 417.)

The court further noted that the police, as involuntary bailees of such cars, had only a duty of slight care which could be adequately fulfilled by locking the door and rolling up the windows. The majority attempts to distinguish *Mozzetti* on the grounds that the evidence involved there had been removed from a closed suitcase within the car. Yet, if police must inventory valuables as a protection against theft or claims of theft, there can be no logical reason for failing to inventory valuables stored in suitcases or other closed containers. The same objection applies to the majority's attempt to distinguish *Boulet* on the grounds that the evidence there was removed from a closed shaving kit. The glove compartment in defendant Clark's car was apparently just as "closed" and inaccessible to passers-by as the suitcase in *Mozzetti* or the shaving kit in *Boulet*.

While the facts of the case in *State v. Opperman* distinguish it in some respects from *Mozzetti, Boulet* and the instant case, the court there espoused the same principle that police inventory searches must be restricted to safeguarding articles within plain view which may be likely to tempt passing vandals to explore the car and damage its contents.

In this case, there is no contention that the defendant's car was searched incident to his arrest or that there was probable cause to search the car, or that the evidence in question was in plain sight. Nor is there evidence that the search was necessitated by any other exigent circumstance which could not have been accommodated by a less serious intrusion into the defendant's right to privacy. The search was illegal and evidence seized as a result of that search should have been suppressed.

When confronted with the checks seized during the search, the defendant confessed to forgery. The State conceded at oral argument that this confession was the product of the search. Consequently, I would exclude the confession from evidence along with the other fruits of the unlawful search. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed.2d 171, 84 S.Ct. 229; *People v. Rodriquez,* 79 Ill.App.2d 26, 223 N.E.2d 414; *Brown v. Illinois,* 422 U.S. 590, 45 L.Ed.2d 416, 95 S.Ct. 2254.