642 P.2d 1093

STATE of New Mexico, Petitioner,

v.

Richard Edward WILLIAMS, Respondent.

No. 13574.

Supreme Court of New Mexico.

March 24, 1982.

Jeff Bingaman, Atty. Gen., Charles F. Noble, Marcia E. White, Asst. Attys. Gen., Santa Fe, for petitioner.

Martha A. Daly, Appellate Defender, Santa Fe, for respondent.

## OPINION

PAYNE, Justice.

The defendant was convicted of armed robbery with firearm enhancement, con-

trary to Sections 30–16–2 and 31–18–4, N.M.S.A.1978. The Court of Appeals reversed on grounds that evidence obtained pursuant to an improper search of the defendant's car directly undermined the defendant's claim of insanity and should have been suppressed. The search was made without a warrant and the court concluded that it neither was made under exigent circumstances nor satisfied the requirements of an inventory search. We disagree with the latter conclusion and affirm the conviction.

On May 6, 1979, the defendant displayed a gun and forced a cashier to empty three separate cash registers at a grocery store. The cashier placed the money in a grocery bag which he carried from register to register. While the cashier was emptying a fourth register, a customer, wielding a gun, directed the defendant to set his weapon down on the counter. Shortly thereafter, the defendant was arrested and taken to the police station for booking. During booking, an officer found a set of keys in the defendant's pocket and, without obtaining a warrant, returned to the store to locate the defendant's car. The officer found the car locked and legally parked behind the grocery store. He then conducted an inventory search of its contents. Among the items inventoried were a map marked with an "escape route" and a checkbook showing a negative balance. These were seized by the officer.

The trial court denied a motion to suppress the seized evidence with the following statement:

The City or the police department have an obligation to protect the vehicle, to protect the inventory, and to hold them responsible in excess of the normal responsibility would be unfair to them. They have to inventory, and if they don't inventory they could be liable for the loss, and they must remove the vehicle from its location because of the possibility of danger. It was taken in accordance with the regulations. Unless there is something that is given to the Court that the Court would have notice that there was a violation of the procedures or something else was done that is not in accordance with their inventory procedure, then the Court is going to deny the motion.

■ We limit our discussion of the search to a determination of whether it was a proper inventory search. An inventory search of an automobile is constitutional if three requirements are met: 1) the vehicle to be inventoried is in police control or custody; 2) the inventory is made pursuant to established police regulations; and 3) the search is reasonable. *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980).

The defendant does not assert that his vehicle was not in police control and custody. Other courts have held in similar situations that such custody of personal property is proper. *United States v. Staller*, 616 F.2d 1284 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *United States v. Gravitt*, 484 F.2d 375 (5th Cir. 1973), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); *United States v. Rosenberg*, 458 F.2d 1183 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct. 166, 34 L.Ed.2d 117 (1972). Rather, his challenge goes to the further requirement that custody "must be based on some legal ground and there must be some nexus between the arrest and the reason for the impounding. *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973)." *Id.* at 502, 612 P.2d at 1313 (footnote omitted). The *Preston* case was decided on the basis that the search "was too remote in time or place to have been made as incidental to the arrest." *Preston, supra* at 368, 84 S.Ct. at 883. That search was never characterized as an "inventory search;" indeed, the manner of search—entering the trunk through the back seat of the car—distinguishes it from the type of search involved in the instant case. The only relevance of *Preston* to inventory search cases is in its example of a nexus between the arrest and the impoundment. In *Preston*, the defendants were arrested for vagrancy while sitting in their parked car. Upon this arrest, the police

properly took custody of the vehicle, even though they presumedly could have locked it and left it parked where it was. *United States v. Lawson, supra,* also cited in *Ruffino,* involved an arrest for passing insufficient funds checks. The defendants' vehicle was locked and parked in a motel parking lot. It was impounded and taken to the police station on the day of the arrest. The next day an inventory search was performed. There was no suggestion that the impoundment was improper.

*Preston* and *Lawson,* as examples of impoundments incident to the respective arrests, indicate that while there must be *some* nexus between the arrest and the reason for the impounding, that nexus need only be reasonable. In neither of those cases could the impoundment be characterized as necessary because the car was a traffic hazard, *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), or because it was violating a parking ordinance, *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Therefore, *Preston* and *Lawson* were cited in *Ruffino* as illustrations that no compelling need must be present to justify impoundment of a vehicle incident to an arrest.

Accordingly, we hold that the first *Ruffino* requirement was satisfied in this case. When the officer returned to locate the defendant's car, as directed by his supervisors, he was authorized to take custody for the purpose of having it towed. Thus, the vehicle was in police control and custody. The possible use of the vehicle as evidence of the crime, discussed more fully *infra,* supplies the necessary nexus between the arrest and the reason for impounding. The fact that the vehicle was legally parked and *could* have been left there does not make the impoundment improper.

The second *Ruffino* requirement, that the inventory must be made pursuant to established police regulations, was considered by the trial court. The defendant claimed that the officer did not follow the following police department standard operating procedure:

314.02 The owner/operator of a vehicle has the right to select a wrecker of his choice or to release his vehicle to a qualified driver present at the scene or to legally park the car unless:

A. He is physically or mentally incapable of doing so.

B. The vehicle is needed as evidence of a crime.

The defendant was afforded no such choice.

The State argues that the vehicle was a means of escape, and therefore was needed as evidence of the crime. Until the officer actually located a car with license plates from the defendant's home state and which could be opened with the defendant's keys, the very existence of the car was uncertain. Once the car was found, its proximity to the scene of the crime and testimony related to the officer by local residents to the effect that the car had been there only a short while constituted sufficient basis for a conclusion that the vehicle was related to the crime. Hence, there was no need to give the defendant a choice as to disposition of the car.

No other failure to comply with the police regulations was alleged by the defendant. On this evidence, the second *Ruffino* requirement was satisfied.

The third requirement—that the search be reasonable—has been carefully examined in inventory search cases. *See, e.g., Opperman, supra; Dombrowski, supra; Lawson, supra.* It is unnecessary to restate the balancing approach to determining the reasonableness of inventory searches. The *Lawson* case upheld suppression of a gun found in a locked trunk because the only justification for the search of the automobile was its possession by police.

While police custody may justify reasonable measures to protect ... property within plain view in the automobile, such reasonable measures do not extend to breaking into a locked trunk.

*Id.* at 475. While we disagreed with this analysis in *Ruffino* and specifically permitted trunk searches as part of an inventory procedure, even under the *Lawson* approach

the map and checkbook could have been removed as a protective measure.

We hold that in light of *Ruffino*, the search made here was reasonable and permissible, and we uphold the trial court's denial of the defendant's suppression motion. Accordingly, the Court of Appeals is reversed.

The defendant raised three additional issues before the Court of Appeals which that court did not reach. Since the remaining issues are easily disposed of, we consider them here.

■ First, the defendant assigns error to the trial court's refusal to instruct the jury on the lesser-included offense of attempted armed robbery. This claim is based on the fact that the defendant never actually possessed the money nor left the store with it. The implication is that the defendant never "carried away" the money, which is an essential element of armed robbery. N.M.U. J.I.Crim. 16.11, N.M.S.A.1978. N.M.U.J.I. Crim. 16.02 defines "carried away" as "moving the property from the place where it was kept or placed by the owner." The instant the cashier, under the defendant's coercion, removed the money from the first register, this element was satisfied. There is no evidence to justify a jury finding that this element was not met. There was no error in refusing the instruction.

■ Second, the defendant assigns error to the trial court's refusal to instruct the jury on the definition of mental disease. Although the general insanity instruction, N.M.U.J.I.Crim. 41.00, N.M.S.A.1978, was given, the defendant claims the instruction was incomplete here because, while the instruction mentions mental disease, it fails to define what a mental disease is. N.M.U.J.I. Crim. 41.00 adequately instructed the jury on insanity and the trial court did not err in refusing the defendant's tendered instruction. *See State v. Blakely*, 90 N.M. 744, 568 P.2d 270 (1977).

■ Finally, the defendant would have us reverse because the trial court refused to instruct the jury as to the consequences of a verdict of not guilty by reason of insanity.

This was a proper refusal. *State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980); *State v. Chambers*, 84 N.M. 309, 502 P.2d 999 (1972).

IT IS SO ORDERED.

EASLEY, C. J., and FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.

SOSA, Senior Justice, dissenting.

I respectfully dissent.

I cannot join in the majority opinion because the facts of this case do not amount to a constitutional inventory search and because of the unreasonable burden the majority places on our police officers.

### I.

I agree that the three requirements for a constitutional inventory search are: (1) the vehicle to be inventoried must be in police control or custody; custody must be based upon a legal ground and there must be a nexus between the arrest and the reason for impoundment; (2) the inventory must be made pursuant to established police regulations; and (3) the search must be reasonable. *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). However, the above requirements were not met in this case.

The majority opinion states that the defendant does not assert that his automobile was not in police control or custody. I disagree. At the trial level, the defendant alleged that the search and seizure of his automobile was "not valid as an inventory search because the automobile was lawfully parked and there was no necessity to remove it into police custody." In my judgment, this allegation is sufficient to assert that the automobile was not in police custody. Furthermore, the issue on writ of certiorari as presented by the state is "[w]hether the facts in this case meet the requirements for a valid inventory search as stated by this Court" in *Ruffino, supra*. The first requirement is that the police have control or custody of the defendant's automobile.

The police did not have control or custody of the defendant's automobile. The defendant was arrested inside the grocery store he attempted to rob and later transported to the police station. At the station, the police inventoried certain items the defendant had in his possession and seized a set of keys he was carrying. Such an inventory is conducted as part of the booking process as a reasonable means of safeguarding the property of the accused while he is in jail, and so that no weapons or contraband would be introduced into the jail. *United States v. Tillery*, 332 F.Supp. 217 (E.D.Pa.1971), aff'd, *United States v. Smith*, 468 F.2d 381 (3d Cir. 1972); *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971).

After seizing the keys, instead of safeguarding them from loss, the police decided to try their luck at locating the defendant's automobile. The reasons alleged by the officer for locating the vehicle were three-fold: (1) to seize the automobile as a means of escape; (2) because he believed he would find additional evidence in the automobile, such as ammunition; and (3) because his supervisor, without reason, told him to locate the automobile. Thus, not even knowing whether the defendant was driving an automobile prior to the attempted robbery, the police proceeded to the store to look for an automobile which the keys would open. Although the defendant's automobile was legally parked on a street directly behind the store, the officers searched the interior and hatch of the automobile and found a checkbook and a map with an alleged escape route.[1]

The majority incorrectly disposes of the custody issue. The police did not even know of the existence of the automobile nor its location. How could the police then have control or custody of the automobile? What the majority now permits is for a police officer to make a valid arrest, obtain the keys of the accused and proceed to search a city for his automobile so that they can search it, and then justify it as an inventory search. This is a clear violation of the Fourth Amendment.

Control and custody of keys is not sufficient to have control and custody of the items the keys will open. The logical extension of the majority's holding is that a police officer who legally obtains the keys of an accused may then proceed to open a locked suitcase, safety deposit box, and possibly a house. I cannot join the majority in encouraging such blatant constitutional violations.

Also, in *Ruffino, supra*, we required that custody of a vehicle be based upon some nexus between an arrest and the reason for the impoundment. Here, there was no nexus. This involved a warrantless search of an automobile without justification under one of the few exceptions to the warrant requirement. Since the police did not even know whether a vehicle existed (as the majority acknowledges) or whether the vehicle could be evidence of a crime, there could be *no* nexus between the arrest and the impoundment. The State argues that the vehicle was evidence of a means of escape. The import of this contention is questionable, since "escape" is not an element of the crime for which the defendant is being accused. § 30–16–2, N.M.S.A.1978. The police officers merely engaged in a "fishing expedition" clearly impermissible by our constitution. If the police believed that this automobile contained evidence of a crime, they should have specified in writing their probable cause and have sought a search warrant from a neutral and detached judge.

The police department also failed to comply with their own procedures. Section 314.02, as fully set out by the majority, permits an owner of an automobile to legally park his car unless the owner is physically or mentally incapable of doing so, or the automobile is evidence of a crime. The latter exception is argued by the State. However, I fail to see how the automobile could be evidence of the robbery, since the defendant was caught while attempting to rob. Thus, since the car was already legally parked and the police did not even know of

---

1. State's Exhibit 4, the tow-in report which allegedly includes a list of the items inventoried in the automobile, does not list the map as having been inventoried.

its location or existence, the police need not have searched for it nor inventoried it, once located. The police had all the evidence they needed to proceed to trial on the robbery charge. They did not need to extend themselves into impermissible grounds without a warrant.

## II.

Before the majority ruled in this case, an inventory search of an automobile was required for two principle reasons. One, to protect the automobile while in the custody of police, *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); two, to protect police from false tort claims or potential danger. *See United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973). Generally, the automobile was either evidence of a crime (*i.e.*, stolen), was required to be impounded by state law, *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), was impounded because the accused was arrested while in or near the automobile, *Harris, supra,* or the automobile was illegally parked, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

The majority now creates another category for impoundment which, in my judgment, imposes an unacceptable burden on police officers. The majority requires that a police officer, who makes a valid arrest and finds automobile keys on the defendant during the booking process, take those keys and attempt to locate the defendant's automobile so that the automobile may be inventoried and then impounded. Under this new category, the police need not be certain of the existence or location of the automobile; the automobile need not be in police custody; the police need not be required to protect it; nor need they be subjected to false tort claims or be subject to any danger. If a police officer is uncertain of the existence of an automobile belonging to an accused, and the automobile is not evidence of a crime, no logical nor legal reason exists for making the officer search a city for the automobile to insure its security. However, the majority now imposes such a require-

ment, and, as such, the police will hereinafter be subject to liability if loss occurs to an accused and the police did not search for his automobile and have it impounded, although they had custody of his keys.

## III.

There is little doubt that this defendant is guilty of the crime for which he is being charged. This fact can be proven by the State without the use of the unlawfully-obtained evidence. However, in analyzing whether a particular defendant has had his constitutional rights violated, we are required to ignore his guilt or innocence. We must decide these constitutional questions on their merit alone. In my judgment, although this defendant is probably guilty, his Fourth Amendment rights were violated. Evidence obtained in violation of the Fourth Amendment is not admissible at trial. The trial court having improperly admitted this evidence, I would remand for a new trial.

In view of my apparent disposition of this case, I need not address the remaining issues discussed by the majority.

I respectfully dissent.