IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __**October 2, 2017**__

**NO. A-1-CA-34951**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**LARRY BYROM,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellant

Arlon L. Stoker
Farmington, NM

for Appellee

**OPINION**

**FRENCH, Judge.**

{1}	The State appeals from the district court's order granting Defendant Larry Byrom's motion to suppress evidence discovered in Defendant's vehicle during a warrantless search by a police officer. The district court suppressed the evidence on the ground that the community caretaker exception to the Fourth Amendment's warrant requirement of the United States and the New Mexico Constitution was not applicable because (1) Defendant was not arrested before the officer decided to impound and inventory Defendant's vehicle, and (2) there was no evidence that the parking lot where Defendant's vehicle was located posed particular safety concerns or subjected the vehicle to the risk of theft or vandalism. We reverse the district court's decision to suppress the evidence because the applicability of the community caretaker exception does not depend on the existence of an arrest or on the presentation of evidence specifically showing unsafe conditions or the potential for loss or damage.

**BACKGROUND**

{2}	The facts are taken from the testimony at the suppression hearing held on June 11, 2015, unless otherwise noted. New Mexico State Police Sergeant James R. Foreman responded to a call from dispatch on February 2, 2015 around 3:30 p.m.

concerning a man "slumped over the steering wheel" of his vehicle in the parking lot of Dino's Mini-Mart in Farmington, New Mexico. The call was an "EMS assist"—when emergency medical services are requested, law enforcement officials often assist for safety purposes. Sergeant Foreman arrived before the medics and found the vehicle properly parked in a parking space in front of the store. Sergeant Foreman approached the vehicle from the driver's side. The window was rolled down, and he observed the driver (Defendant) "slumped over." Sergeant Foreman said he was unable to determine "if he was sleeping, passed out, . . . unconscious." Defendant "was sitting there in an unresponsive state." Sergeant Foreman reached into the vehicle through the window and "shook" Defendant. Defendant then sat up, put his hands to his face, and said "I can't see. My eyes are on fire." Sergeant Foreman said that he was not sure what to do next but that he knew emergency medical services were on the way, so he told Defendant to remain seated and wait for the medics to arrive. Sergeant Foreman then asked Defendant if he had taken narcotics, "because it's standard questioning to find out what type of medical services a person needs when [law enforcement] make[s] contact with them." Defendant answered negatively, and Sergeant Foreman asked to see Defendant's eyes. Sergeant Foreman said that Defendant's eyes were "pin-pointed" and that he "didn't do much 'til the medics got there" in order to "let them do their evaluation."

{3}     Medics arrived a few minutes later, and, according to the district court's findings of fact, "[Sergeant] Foreman decided, in conjunction with the advice of the EMTs on the scene," that Defendant should be taken to the emergency room. While escorting Defendant from his vehicle to an ambulance, Sergeant Foreman told Defendant, "You go to the ER with the medics. I will take care of your vehicle, then I will meet you at the ER." The district court found that "Defendant can be heard to respond 'Okay' and then say something which is inaudible." Defendant did not instruct Sergeant Foreman about how to care for his vehicle, which turned out to be rented, and Sergeant Foreman noted that Defendant appeared to be alone, without anyone accompanying him. Sergeant Foreman then decided to have the vehicle towed because, according to his testimony, police policy required that he do so. Sergeant Foreman added that he was not allowed to simply lock the car and leave the rented vehicle in the parking lot when no other person was present to take possession of it. He testified that police policies require officers conducting inventory searches of vehicles to complete a tow authorization form listing all items worth more than $25. Sergeant Foreman further testified that the reason he decided to have the vehicle towed was "for the protection of myself and for the person who was responsible for the vehicle . . . we do it to protect ourselves from anyone saying that . . . there was $500 in that purse and now there's not."

{4}    Prior to the arrival of the tow truck, Sergeant Foreman inventoried the vehicle and its contents. Sergeant Foreman found a closed backpack in the backseat and, upon opening it, discovered drugs and drug paraphernalia. Defendant was discharged from the hospital later the same day and was then arrested as a result of an arrest warrant based upon the drugs Sergeant Foreman discovered in Defendant's vehicle.

{5}    Defendant was charged with trafficking a controlled substance, contrary to NMSA 1978, Section 30-31-20 (2006), and distribution of marijuana, contrary to NMSA 1978, Section 30-31-22(A)(1)(a) (2011). Defendant moved to suppress all of the items seized during the course of Sergeant Foreman's inventory search of Defendant's vehicle, challenging Sergeant Foreman's authority to impound Defendant's vehicle. Defendant argued that an officer has statutory authority to tow a vehicle if: (1) the vehicle was involved in an accident; (2) the vehicle is evidence of a criminal offense; or (3) the vehicle was abandoned on or adjacent to a roadway. Defendant also argued that none of the exceptions to the Fourth Amendment's warrant requirement applied: Sergeant Foreman did not arrest Defendant, so the search cannot be justified as a search incident to arrest; there existed no exigencies requiring Sergeant Foreman to search the vehicle in order to preserve a life or prevent serious damage to property; Defendant did not consent to the search; and nothing in

4

plain view in the vehicle gave rise to Sergeant Foreman's perceived need to search the vehicle.

{6}    In response to the motion, the State argued that the warrantless search of Defendant's vehicle was reasonable under the community caretaker exception, citing two New Mexico cases—*State v. Shaw*, 1993-NMCA-016, 115 N.M. 174, 848 P.2d 1101, and *State v. Ruffino*, 1980-NMSC-072, 94 N.M. 500, 612 P.2d 1311—discussing the impoundment and inventory doctrine of the community caretaker exception. Following the suppression hearing, the district court allowed the parties to submit additional briefs. Defendant's supplemental brief maintained that Sergeant Foreman's decision to impound the vehicle cannot be justified under the community caretaker exception because an officer responding to an emergency assistance call must have a reasonable basis to associate the emergency with the location searched. Once medics removed Defendant from the vehicle, Sergeant Foreman could not possibly have needed to search the vehicle in order to aid in the emergency response. The State's supplemental brief maintained that during each stage of an encounter, an officer's actions must be justified. The initial encounter was "justified by the community caretaking doctrine[,]" and the justification for the decision to tow and search Defendant's vehicle after Defendant went to the hospital "is based on the inventory exception to the warrant requirement."

{7}     The district court entered a written order granting Defendant's motion to suppress. In the order, the district court stated that Sergeant Foreman did not lawfully acquire custody and control of the vehicle prior to conducting the inventory search. The court noted, "[t]aking custody and control of a person's vehicle is not automatic in all circumstances where the officer is responsible for separating a person from his or her vehicle." The district court concluded that absent an arrest, the inventory search was improper. Furthermore, without evidence showing that leaving the vehicle in the parking lot subjects it to specific safety concerns, "[t]he community caretaking doctrine also does not, in this case, make the warrantless seizure of . . . Defendant's car lawful under the Fourth Amendment."

{8}     The State timely appealed. The State argues that Sergeant Foreman acted as a community caretaker by responding to the call from dispatch and that his subsequent decision to impound the vehicle was justified by the impoundment and inventory doctrine of the community caretaker exception. Defendant maintains that the emergency aid doctrine of the community caretaker exception applies and does not justify Sergeant Foreman's decision to impound and inventory Defendant's vehicle. We begin with a review of the community caretaker exception to the Fourth Amendment and the doctrines it encompasses—the emergency aid doctrine, the impoundment and inventory doctrine, and the public servant doctrine. We detail the

differing tests of the two doctrines at issue, determine the doctrine under which the facts of the present case must be analyzed, and apply the appropriate test.

**STANDARD OF REVIEW**

{9}     "Appellate courts review a district court's decision to suppress evidence based on the legality of a search as a mixed question of fact and law." *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. "We view the facts in the light most favorable to the prevailing party and defer to the district court's findings of historical facts and witness credibility when supported by substantial evidence." *Id*. "The legality of a search, however, ultimately turns on the question of reasonableness." *Id*. "Although our inquiry is necessarily fact-based it compels a careful balancing of constitutional values, which extends beyond fact-finding, to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context[.]" *Id*. (internal quotation marks and citation omitted). "We thus review the determination of reasonableness de novo." *Id.* Given the arguments and decision below, our analysis necessarily begins with a review of the community caretaker exception.

**DISCUSSION**

{10}     The community caretaker exception to the Fourth Amendment developed from the understanding that police officers frequently interact with citizens without an

7

investigative purpose. Police have "dual roles," acting as criminal investigators and as community caretakers. *Id.* ¶ 13. The caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). When police engage in conduct unrelated to crime-solving, officers need not possess warrants, probable cause, or reasonable suspicion. *Ryon*, 2005-NMSC-005, ¶ 24. However, reasonableness remains the touchstone of the Fourth Amendment. To evaluate the reasonableness of a warrantless search or seizure based on community caretaking, we must balance "the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id*. (internal quotation marks and citation omitted).

{11} From this balancing of interests, three separate doctrines within the community caretaker exception have been developed—the emergency aid doctrine, the impoundment and inventory doctrine, and the public servant doctrine. *Id*. ¶ 25 ("[D]efining the community caretaker exception as 'broad' and encompassing three versions, each requiring a different test[.]" (citing Mary E. Naumann, Note, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 Am. J. Crim. L. 325, 330-31 (1999))). Each doctrine stems from the basic premise underlying the community caretaker exception—an officer's interaction with a citizen

in need is motivated by a desire to aid, not investigate. *Ryon*, 2005-NMSC-005, ¶ 25. But, importantly, "it does not follow that all searches resulting from such activities should be judged by the same standard." *Id*. (internal quotation marks and citation omitted). We have adopted different tests for assessing the reasonableness of the officer's conduct based on the particular doctrine at issue.

{12}   The State argues that the facts of this case must be analyzed under the impoundment and inventory doctrine, and not the emergency aid doctrine, as Defendant contends. We outline the tests of each doctrine as set forth in several New Mexico cases and conclude that the facts of this case call for analysis under the impoundment and inventory doctrine.

{13}   Under the emergency aid doctrine, the State has the burden of establishing the following three-part test:

> First, the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. Second, the search must not be primarily motivated by intent to arrest and seize evidence. Third, there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Id*. ¶ 29 (alterations, internal quotation marks, and citations omitted). Typically, the application of the emergency aid doctrine is limited to situations where an officer acts to protect or preserve a citizen's life, or acts to avoid serious injury. *Id*. ¶ 26. In New Mexico, we have exclusively applied the emergency aid doctrine to intrusions into

9

the home. *See id.* ¶ 44 (concluding that entry into a home was unreasonable under the emergency aid doctrine where an officer responded to several calls from dispatch referring to a victim of a stabbing and other persons with possible head injuries); *State v. Gutierrez*, 2005-NMCA-015, ¶ 14, 136 N.M. 779, 105 P.3d 332 (holding the search of pants pockets at a hospital was unreasonable under the emergency aid doctrine where an officer first encountered the defendant on the floor of the defendant's house in response to a call concerning a possible overdose); *State v. Nemeth*, 2001-NMCA-029, ¶¶ 32-36, 40, 130 N.M. 261, 23 P.3d 936 (determining that entry into a home in response to a possible suicide call was reasonable under the emergency aid doctrine), *overruled on other grounds by Ryon*, 2005-NMSC-005, ¶ 28. "The emergency [aid] doctrine applies to, but is not limited to, warrantless intrusions into personal residences." *Ryon*, 2005-NMSC-005 ¶ 26 (internal quotation marks and citation omitted).

{14}     The impoundment and inventory doctrine has, under our cases, been applied to searches of vehicles and other personal items. To be valid under the impoundment and inventory doctrine, the seizure and search of the item must meet a three-part test, different from that required by the emergency aid doctrine. First, the vehicle must be in police custody and control. *Ruffino*, 1980-NMSC-072, ¶ 5. More specifically, the police must *lawfully* have custody and control of the item. *Id*. Police custody must be

based on "some legal ground" with "some nexus between the arrest and the reason for the impounding." *Id*. Second, the officer must conduct the inventory search "pursuant to established police regulations." *Id*. These regulations may proscribe the limits of the search, but they have no bearing on the reasonableness of the search itself. *Id*. Finally, the search must be reasonable and will be upheld if made "in furtherance of any one of three purposes: (1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Shaw*, 1993-NMCA-016, ¶ 10. Many of the cases applying the impoundment and inventory doctrine involve automobiles, and in all of them, officers arrested the defendant prior to gaining custody of the items and subsequently searching them. *See State v. Boswell*, 1991-NMSC-004, ¶ 2, 111 N.M. 240, 804 P.2d 1059 (describing arrest prior to the search of the arrestee's wallet); *State v. Williams*, 1982-NMSC-041, ¶ 2, 97 N.M. 634, 642 P.2d 1093 (describing arrest prior to the search of the arrestee's vehicle); *Ruffino*, 1980-NMSC-072, ¶ 2 (describing arrest prior to the search of the arrestee's vehicle); *Shaw*, 1993-NMCA-016, ¶¶ 2, 3 (describing the search of a wallet and a cigarette pack during the arrestee's booking into the detention center).

{15} We evaluate the constitutionality of the search of Defendant's vehicle in the present case using the impoundment and inventory doctrine of the community

11

caretaker exception, rather than the emergency aid doctrine for the following reason. Generally, entry into a home in response to an emergency assistance call triggers application of the emergency aid doctrine, and an arrest preceding the search and seizure of the arrestee's possessions triggers application of the impoundment and inventory doctrine. In the present case, Defendant and the State agreed at the suppression hearing that the contact between Sergeant Foreman and Defendant occurred as a result of the officer responding to an emergency assistance call. The initial encounter was, therefore, premised on the provision of emergency care. As the district court observed, "[Sergeant] Foreman acted in his community caretaking capacity when he decided . . . Defendant should be taken to the hospital. The warrantless seizure of . . . Defendant's person was therefore constitutionally valid under the Fourth Amendment because community caretaking is a recognized exception to the warrant requirement." At issue is the officer's conduct *following* the initial encounter, specifically Sergeant Foreman's decision to impound and search Defendant's vehicle after Defendant's departure.

{16}     Under our case law, the emergency aid doctrine operates to justify the search of a home upon an officer's arrival at a given location under circumstances that call for the officer to exercise the community caretaking responsibility to provide emergency assistance. *See Ryon*, 2005-NMSC-005, ¶ 4 (describing entry into a home

12

in response to several calls from dispatch concerning a stabbing victim and other persons with possible head injuries); *Nemeth*, 2001-NMCA-029, ¶¶ 3, 8 (describing entry into a home in response to a possible suicide). In such circumstances, whatever search is conducted happens alongside the officer's actions in response to providing emergency assistance. The first requirement of the three-part test reflects the importance of this contemporaneous connection—the "police must have reasonable grounds to believe that there is . . . an *immediate* need for their assistance for the protection of life or property." *Ryon*, 2005-NMSC-005, ¶ 29 (emphasis added) (internal quotation marks and citation omitted). Here, by the time Sergeant Foreman searched Defendant's vehicle, the emergency had subsided and been resolved by the decision to have Defendant taken to the hospital. Sergeant Foreman could not possibly claim that he needed to seize the vehicle and inventory its contents in order to aid its owner where the owner was himself no longer within the vehicle and was already receiving substantial assistance from medical personnel at a different location. Unlike *Nemeth* and *Ryon*, rendering emergency assistance to Defendant did not require Sergeant Foreman to enter into or search Defendant's vehicle.

{17} We must, therefore, analyze Sergeant Foreman's decision to impound Defendant's vehicle and inventory the items within it under the impoundment and inventory doctrine of the community caretaker exception. We begin by reviewing the

13

line of New Mexico cases discussing the test for the impoundment and inventory doctrine, beginning with *Ruffino*. We track the development of the test, state it in its present form, and apply it to the facts of this case.

**A.  The Impoundment and Inventory Doctrine of the Community Caretaker Exception**

{18}  The State cites federal circuit court opinions in support of its argument that Sergeant Foreman's decision to tow Defendant's vehicle was justified by the impoundment and inventory doctrine. The State asserts that there is "no standardized criteria for evaluating reasonableness—it depends on a case-by-case inquiry of the facts and circumstances leading to the decision to impound." We find the State's characterization of the law accurate and supported by four decisions from New Mexico's appellate courts. We discuss these four cases sequentially, apply the resulting legal precepts to the facts of this case, and conclude that Sergeant Foreman's decision to impound and inventory Defendant's vehicle was reasonable.

**B.  New Mexico Cases**

{19}  As previously discussed, New Mexico's appellate courts have established a three-part test for assessing reasonableness under the impoundment and inventory doctrine, often referred to as the *Ruffino* requirements. In *Ruffino*, our Supreme Court found reasonable an officer's search of a vehicle following the arrest of the owner of the vehicle. The officer first searched the vehicle's interior, then used the keys to

unlock the trunk and inventory the items within the trunk. The defendant challenged the search of the trunk specifically. Despite the defendant's specific complaint that the search of the trunk exceeded the officer's authority under the impoundment and inventory doctrine, the Court held that "the initial search was valid," and that "the entry into the trunk was equally valid." *Ruffino*, 1980-NMSC-072, ¶¶ 2, 6. "To forbid entry into trunks as part of an inventory search would frustrate the very purpose of the inventory, since the trunk is a likely place for valuables to be stored." *Id*. Although *Ruffino* discusses which parts of an automobile may be subject to an inventory search, a question not at issue in the present case, the decision set forth the three-part test used in New Mexico for evaluating a search and seizure based on the impoundment and inventory doctrine. In short, the vehicle must be in police custody or control, the inventory made pursuant to established police regulations, and the search reasonable.

{20}     The following three cases apply the *Ruffino* requirements and together embody New Mexico law on valid inventory searches. In *Williams*, our Supreme Court found reasonable an officer's search of a vehicle legally parked behind a grocery store following the arrest of its owner. Officers arrested the defendant while he attempted to force a cashier to empty her register at gun point. *Williams*, 1982-NMSC-041, ¶ 2. After taking the defendant to the police station for booking, officers discovered "a set

15

of keys in the defendant's pocket." *Id*. An officer returned to the store to locate the defendant's vehicle, found it "locked and legally parked behind the grocery store[,]" and then searched its contents. *Id*. The defendant sought suppression of the items found during the officer's inventory search of the vehicle, arguing that the state failed to prove the first requirement of a valid inventory search—there must exist "some nexus between the arrest and the reason for the impounding." *Id*. ¶ 5 (internal quotation marks and citation omitted).

{21}     Our Supreme Court concluded that "the first *Ruffino* requirement was satisfied," citing two federal cases. *Williams*, 1982-NMSC-041, ¶¶ 5, 7 (citing *Preston v. United States*, 376 U.S. 364 (1964) and *United States v. Lawson*, 487 F.2d 468 (8th. Cir. 1973)). In *Preston*, the police properly took custody of a vehicle after arresting the defendants for vagrancy while sitting in the parked vehicle, "even though they presumedly could have locked it and left it parked where it was." *Williams*, 1982-NMSC-041, ¶ 5. In *Lawson*, the police impounded a locked vehicle parked in the parking lot of a motel on the day that they arrested the vehicle's owner for passing insufficient funds checks. *Williams*, 1982-NMSC-041, ¶ 5. Our Supreme Court observed that the decision to impound in those cases could not be justified because of some necessity, e.g., the car presented a traffic hazard or its location violated a parking ordinance. *Id*. ¶ 6. Rather, *Preston* and *Lawson* illustrate "that no

compelling need must be present to justify impoundment of a vehicle incident to an arrest." *Williams*, 1982-NMSC-041, ¶ 6. "The possible use of the vehicle as evidence of the crime . . . supplies the necessary nexus between the arrest and the reason for impounding." *Id*. ¶ 7. Notably, our Supreme Court clarified, "[t]he fact that the vehicle was legally parked and could have been left there does not make the impoundment improper." *Id*.

{22}    In *Boswell*, our Supreme Court found reasonable a search of the defendant's wallet conducted after an officer took the defendant to the police station for booking. Suspecting the defendant of shoplifting at his grocery store, the store's manager detained the defendant in his office. 1991-NMSC-004, ¶ 2. Upon arrival, the police requested the defendant's identification. *Id*. After retrieving his identification from his wallet, the defendant inadvertently placed his wallet on a cabinet in the office where it remained until an officer returned to the grocery store to find it during the defendant's booking. *Id*. As in *Williams*, the defendant in *Boswell* sought to suppress the drugs later found in his wallet, arguing that the police did not have lawful custody of the wallet, i.e., that there was no reasonable nexus between the defendant's arrest for shoplifting and the officer's seizure of the wallet. *Boswell*, 1991-NMSC-004, ¶¶ 4, 8.

{23} Our Supreme Court held that, "[t]he reasonable nexus between the arrest and seizure need not be based on probable cause, but can be based on all the facts and circumstances of this case in light of established [F]ourth [A]mendment principles." *Id*. ¶ 12 (alteration, internal quotation marks, and citation omitted). The Court's analysis of the first requirement tracked the facts relevant to the third requirement of a valid inventory search, that is, its reasonableness: the defendant's wallet was left in the manager's office, a location in which the defendant had no reasonable expectation of privacy or possessory interest; the defendant left the wallet accidentally and in an unsecure place "as an immediate result of [his] arrest[;]" theft or loss of the wallet was probable; and the police may be liable for such loss or theft. *Id*. ¶ 13.

{24} Importantly, *Boswell* also explicitly rejected the defendant's argument that the officer cannot lawfully acquire custody of the defendant's possessions if the defendant can arrange for someone else to retrieve the item. *Id*. "This would not have removed the risk that intervening causes would result in the loss of the wallet, nor would it exculpate the police had it been lost." *Id*. The officer's investigation of the defendant created a situation that put the defendant's property at risk of theft or loss, and therefore, the officer has an "on-going" responsibility to safeguard the defendant's property. *Id*. The risk of loss to the defendant and the possibility of police incurring liability for that loss provide valid bases upon which an officer may claim

to have custody or control of the item. "[T]he reasonable nexus between the initial arrest and [the] seizure is not found in a theory of probable cause to suspect the existence of contraband or evidence, nor necessarily on an incident to arrest theory, but in the need to safeguard [the] defendant's property from loss and to protect the police from liability and charges of negligence." *Id*. ¶ 14.

{25} Finally, in *Shaw*, this Court found reasonable a search of a cigarette pack removed from the defendant's pocket during booking, following his arrest for a domestic disturbance. 1993-NMCA-016, ¶¶ 2, 17. The defendant argued that searching the cigarette pack did not further any of the permissible purposes of an inventory search. *Id*. ¶ 12. Because the value of cigarettes is negligible, the defendant argued that a search of a cigarette pack cannot be necessary to protect the arrestee's property or to prevent claims against police for the loss or theft of the cigarettes. *Id*. We rejected this argument for "miss[ing] the essence of the law controlling inventory searches," and we emphasized "that a clearly established inventory procedure may properly require that jailers search all containers, including cigarette packs." *Id.* ¶ 13. Moreover, we acknowledged that *Boswell* "is illustrative of the broad scope of lawful inventory searches." *Shaw*, 1993-NMCA-016, ¶ 14. We concluded "there was substantial evidence to find that the inventory of [the d]efendant's cigarette pack . . . was reasonably made in furtherance of both the protection of the arrestee's property

and to protect the police against false claims because items of value such as money, rings, and bracelets are often temporarily stored in open cigarette packs." *Id*. ¶ 16. In short, we found the search reasonable because the purpose was to inventory the contents of the cigarette pack and because the detention facility's procedure furthered legitimate police interests. *Id*. ¶ 17.

{26}     In sum, the state of the law of the impoundment and inventory doctrine has evolved from the distinctive three-part test first established in *Ruffino*, and now focuses more generally on the reasonableness of the officer's asserted custody or control of the item seized and searched. Insofar as the officer's decision to impound the vehicle or seize the item stems from concerns that the vehicle or item could be lost or stolen and that the officer could be liable for such loss or theft as a result of the officer having separated the owner from the vehicle or item, the officer may impound or seize. Notably, the following considerations do not by themselves defeat the reasonableness of the officer's decision to impound a vehicle or seize an item: whether the vehicle could remain in its location legally if not impounded, *Williams*, 1982-NMSC-041; whether another person could acquire the item on the defendant's behalf, *Boswell*, 1991-NMSC-004; and whether the item is valuable, regardless of whether the officer has any way of knowing its value, *Shaw*, 1993-NMCA-016.

20

## C.    Application of the Impoundment and Inventory Doctrine and Parties' Arguments

{27}    Turning to the present case, we address Defendant's argument and evaluate the reasonableness of Sergeant Foreman's decision to impound Defendant's vehicle. Defendant focuses on several facts that tend to show the unreasonableness of Sergeant Foreman's decision to impound his vehicle. First, Defendant rented the vehicle; he did not own it. Defendant maintains that the car rental company presumably had contingencies for retrieving its own abandoned or disabled vehicles. The initial encounter between Defendant and Sergeant Foreman began at 3:30 p.m., a time the car rental company was reachable by phone. Defendant maintains that these facts prove that calling the car rental company to seek assistance from an agent was the reasonable course of action. Alternatively, Defendant notes that the owner of Dino's Mini-Mart could have arranged for the removal of the vehicle given its location on the owner's property. Second, Defendant highlights the condition and the location of the vehicle. The vehicle was not disabled; it was not a nuisance; it was not obstructing a highway or other public roadway; and it was parked legally.

{28}    We are not persuaded that these facts prove Sergeant Foreman's decision to impound the vehicle was unreasonable. Defendant asserts that the availability of two other persons besides Sergeant Foreman who initiated the police-citizen encounter compel the conclusion that Sergeant Foreman's decision to manage the vehicle

21

himself was unreasonable. Our precedent states that such a fact cannot be dispositive of the reasonableness determination. Indeed, our Supreme Court rejected Defendant's argument in *Boswell*. There, the defendant had asked that a friend, rather than an officer, retrieve the defendant's wallet after the defendant's arrest. *Boswell*, 1991-NMSC-004, ¶ 2. Because reasonableness "can be based on all the facts and circumstances of this case in light of established [F]ourth [A]mendment principles[,]" which include safeguarding the defendant's property upon arrest and limiting the officer's exposure to liability for theft or loss, the Court rejected the defendant's argument that the search of the wallet was unreasonable because someone else could have safeguarded it on behalf of the defendant. *Id*. ¶ 12 (alteration, internal quotation marks, and citation omitted). The Court explained that allowing someone else to recover the defendant's property would not eliminate "the risk that intervening causes would result in the loss of the wallet, nor would it exculpate the police had it been lost." *Id*. ¶ 13. Rather, "[l]eaving the wallet in the office, where [the] defendant had no privacy interest or expectation of security and where any number of unknown individuals may have gained access to the wallet, subject to the friend possibly retrieving it at some future time, would be careless police procedure evincing a lack of concern for the defendant's belongings." *Id*.

{29} The same logic applies here. Fourth Amendment issues and the applicability of exceptions to the Fourth Amendment stem from conduct that occurs between an officer and a citizen. Sergeant Foreman, not the car rental company, not the owner of Dino's Mini-Mart, and not some other person Defendant might have called upon to attend to Defendant's vehicle, was responsible for separating Defendant from the vehicle. Therefore, Sergeant Foreman must also be the person responsible for safeguarding the vehicle and for taking precautionary measures to protect himself from suit should he fail to do so effectively. The willingness of a person—a person not directly involved in the police-citizen encounter but who may have some interest in the vehicle's location—to assume responsibility for a defendant's property cannot be determinative of the reasonableness of the officer's decision to care for the defendant's belongings where the officer was responsible for separating the owner from those belongings through the exercise of the officer's community caretaker obligations.

{30} Similarly, we are not persuaded by Defendant's contention that the operability of the vehicle and the fact that it was parked legally control the reasonableness of Sergeant Foreman's decision to impound the vehicle. Our Supreme Court previously decided that "[t]he fact that the vehicle was legally parked and could have been left there does not make the impoundment improper." *Williams*, 1982-NMSC-041, ¶ 7.

23

The Court cited two United States Supreme Court opinions where, in neither case, "could the impoundment be characterized as necessary because the car was a traffic hazard, or because it was violating a parking ordinance[.]" *Id*. ¶ 6 (citations omitted). Here, as in *Williams*, there existed no compelling need to move the vehicle because it posed a particular hazard or otherwise violated any other traffic laws. *Id*. "[N]o compelling need must be present to justify impoundment of a vehicle incident to an arrest." *Id.* Our cases show that the fact that the vehicle is properly parked does not preclude impoundment of it based on its owner's compelled absence from the parking lot.

{31} We note that we examine the reasonableness of Sergeant Foreman's conduct under circumstances unique to our past cases applying the impoundment and inventory doctrine. Unlike our other cases, Sergeant Foreman did not arrest Defendant before deciding to impound and therefore inventory Defendant's vehicle. The broader legal issue this appeal presents concerns the applicability of the impoundment and inventory doctrine where the officer does *not* arrest the owner of the vehicle prior to making the decision to impound. *See Boswell*, 1991-NMSC-004, ¶ 2 (describing arrest prior to the search of the arrestee's wallet); *Williams*, 1982-NMSC-041, ¶ 2 (describing arrest prior to the search of the arrestee's vehicle); *Ruffino*, 1980-NMSC-072, ¶ 2 (describing arrest prior to the search of the arrestee's

vehicle); *Shaw*, 1993-NMCA-016, ¶¶ 2, 3 (describing the search of a wallet and a cigarette pack during the arrestee's booking into the detention center).

{32}     Defendant argues that the impoundment and inventory doctrine can only apply to situations where police first arrest the owner of the vehicle. We disagree with Defendant, and we conclude that Sergeant Foreman's decision to impound and inventory Defendant's vehicle was reasonable under the impoundment and inventory doctrine given the circumstances that confronted him. We acknowledge that if the defendant's arrest is a necessary component of the rationale underpinning the impoundment and inventory doctrine, then the doctrine may not be applied to the facts of this case, absent novel reasons for the doctrine's existence. We cannot conclude, however, that the doctrine only applies to searches following an arrest for two reasons.

{33}     First, the impoundment and inventory doctrine is, as explained previously, one branch of the community caretaker exception to the Fourth Amendment. The community caretaker exception, not just the impoundment and inventory doctrine, was born from the understanding that not all police-citizen encounters involve criminal investigation. Rather, police frequently interact with citizens innocuously, not seeking to implicate the citizen in a crime. The overarching concept substantiating the community caretaker exception is the non-criminal nature of the officer's contact

with the citizen. The exception itself presupposes the lack of criminal activity that would precede an arrest. It therefore makes little sense to conclude that one of the doctrines within the exception would require criminal activity as a precondition to its application.

{34}     Second, we believe, and our case law supports the conclusion, that an arrest is not what makes an officer's decision to impound a vehicle reasonable. Reasonableness is a function of an officer's responsibility to safeguard the citizen's property and a prudent officer's need to insulate the police from liability should the citizen's property be lost or stolen. *Shaw*, 1993-NMCA-016, ¶ 10. Any time a citizen is separated from his or her belongings, be it because an officer arrested that citizen or because the officer's judgment led the officer to believe the citizen required medical attention at a facility some distance from the citizen's vehicle where the officer responded to the citizen's medical emergency, the citizen's property is left exposed and unattended, and because the officer is involved in the separation of the citizen from the citizen's belongings, the officer opens himself or herself up to potential liability for the loss or theft of those belongings. The reasons an officer's decision to impound may be reasonable rest not on the existence of an arrest, but on the resulting circumstances after an arrest occurs—the separation of the citizen from the citizen's property leaves the citizen's property unattended and in a public place.

26

A medical emergency may produce, exactly as it did in the present case, the same factual circumstances, i.e., the citizen no longer possesses or controls his own property because of the officer's assistance. For the foregoing reasons, we conclude that Sergeant Foreman's decision to impound and inventory Defendant's vehicle was reasonable under the impoundment and inventory doctrine, despite not having arrested Defendant prior to deciding to impound Defendant's vehicle. More specifically, it was not unreasonable for Sergeant Foreman to have decided to impound Defendant's vehicle given that Defendant understood and responded positively to Sergeant Foreman's offer to bring the tow paperwork to the hospital, and that Defendant's rental car would have been left unattended for an unknown period of time in an area known for criminal activity while Defendant received medical treatment.

{35}     Finally, we address Defendant's two remaining arguments. Defendant argues that the State did not offer any evidence proving that there existed a threat of theft or vandalism to the vehicle were Sergeant Foreman to leave the vehicle parked in the parking lot. The only evidence the State presented came from Sergeant Foreman's testimony at the suppression hearing, during which he stated that the location of the convenience store was "known for criminal activity." Defendant cites to our decision in *Apodaca v. New Mexico Taxation & Revenue Dep't*, for the proposition that the

officer must express "specific, articulable safety concern" to justify the intrusion. 1994-NMCA-120, ¶ 5, 118 N.M. 624, 884 P.2d 515. In the present case, the district court concluded that the community caretaker exception requires "actual" evidence of unsafe conditions, and, "[t]here was no evidence it was a high value car or that it contained visible high value items which might make it a target for theft or vandalism."

{36}    We cannot rely on *Apodaca* for this proposition of law. There, an officer stopped the driver of a motorcycle weaving within one lane of traffic in a pendulum-type motion. *Id.* ¶ 2. The officer specifically admitted that he never suspected the driver was intoxicated or otherwise committing a traffic infraction. *Id.* ¶ 3. Rather, the officer initiated the stop out of concern for the driver's welfare, perhaps an injury or illness. *Id.* Accordingly, the defendant argued that the stop was unconstitutional because the officer had no reasonable suspicion that the driver was engaged in criminal activity. *Id.* ¶ 4. We found the stop constitutional because "a police officer may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring." *Id.* ¶ 5. Our decision relied on *State v. Reynolds*, 1993-NMCA-162, 117 N.M. 23, 868 P.2d 668, *rev'd on other grounds by* 1995-NMSC-008, 119 N.M. 383, 890 P.2d 1315.

28

{37}   Both cases, *Reynolds* and *Apodaca*, fall into a different line of cases—those applying the public servant doctrine of the community caretaker exception. *See Ryon*, 2005-NMSC-005, ¶ 26 (citing, exclusively, *Reynolds* and *Apodaca* in the course of explaining the public servant doctrine, where a search and seizure of a vehicle on a public highway "is judged by a lower standard of reasonableness: a specific and articulable concern for public safety requiring the officer's general assistance"). The public servant doctrine, not the impoundment and inventory doctrine, requires the officer to identify specific safety concerns. *Id*. The third branch of the community caretaker exception stems from factual circumstances where one citizen's vehicle poses a particular hazard to the general public. *See Apodaca*, 1994-NMCA-120, ¶ 2 (describing a driver operating a motorcycle on highway erratically); *Reynolds*, 1993-NMCA-162, ¶ 2 (describing a driver operating a vehicle on highway with an open tailgate and three passengers with feet dangling). Here, because Defendant's vehicle remained stationary and in a parking lot, not a roadway, Defendant's vehicle presented no such obstacle. The public servant doctrine does not apply, and therefore, neither does its requirement that the officer proffer identifiable and particular concerns about the safety of the general public in order to justify the officer's decision to stop and search the vehicle. To the extent the district court granted Defendant's motion to suppress because of the State's failure to provide specific

evidence concerning the dangerousness of the parking lot of Dino's Mini-Mart, we conclude the district court's order draws erroneous conclusions of law about the impoundment and inventory doctrine.

{38} Lastly, Defendant argues the State failed to prove Sergeant Foreman's inventory search complied with police regulations and procedures, the second *Ruffino* requirement. Defendant cites two sections of the Department of Public Safety Policy Manual, providing "[w]hen the driver is arrested, the officer shall inventory the vehicle if it is being towed from the scene[,]" and "[o]fficers shall not tow vehicles from private property at the property owner's request due to them being abandoned." According to Defendant, the policies only authorize the towing of a vehicle if the officer arrested its owner. We disagree with Defendant's reading of these policies. The first policy cited by Defendant applies *only if* the officer arrested the driver of the vehicle. It says nothing about the proper procedure to follow if the antecedent is not true, i.e., where the officer did not arrest the driver. The second policy cited by Defendant is irrelevant because Sergeant Foreman did not receive a request from anyone (neither the car rental company nor an owner or employee of Dino's Mini-Mart) to remove Defendant's vehicle.

**CONCLUSION**

{39}    We hold that a police officer may decide to impound a citizen's vehicle under the impoundment and inventory doctrine of the community caretaker exception to the Fourth Amendment where a medical emergency results in the driver's separation from the vehicle. Applying the test appropriate to the impoundment and inventory doctrine, we conclude that Sergeant Foreman's decision to tow and subsequently search Defendant's vehicle was reasonable. We reverse the district court's order granting Defendant's motion to suppress.

{40}    **IT IS SO ORDERED.**


_____
                                        **STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

31